[No. S075263. Mar. 29, 2001.]

THE PEOPLE, Plaintiff and Respondent, v.
FLOYD E. MURPHY, JR., Defendant and Appellant.

**COUNSEL**

Donald I. Segerstrom, Jr., under appointment by the Supreme Court, for Defendant and Appellant.

Daniel E. Lungren and Bill Lockyer, Attorneys General, George Williamson and David P. Druliner, Chief Assistant Attorneys General, Robert R. Anderson, Assistant Attorney General, W. Scott Thorpe, Wayne K. Strumpfer and Rachelle A. Newcomb, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**CHIN, J.**—The "Three Strikes" law prescribes increased punishment for a person who is convicted of a felony after having been previously convicted of specified offenses. (Pen. Code, §§ 667, subds. (b)-(i), 1170.12.)[1] The extent of the increase depends on the number of qualifying prior convictions,

---

[1] Unless otherwise stated, all further statutory references are to the Penal Code. In their briefs, the parties cite and discuss the legislative version of the Three Strikes law (§ 667, subds. (b)-(i)). For convenience, we will do the same in the rest of our opinion. However,

or strikes. The habitual sexual offender statute prescribes a prison term of 25 years to life for a person who is convicted of one or more of certain specified offenses after having been previously convicted of one of those specified offenses. (§ 667.71.)

We granted review in this case to consider the following sentencing issues under these statutes: (1) whether a conviction for oral copulation with a child who is less than 14 years old and more than 10 years younger than the perpetrator (§ 288a, subd. (c)(1)) is a strike under the Three Strikes law; (2) whether a defendant with a qualifying prior conviction under the habitual sexual offender statute who sustains two new qualifying convictions in one proceeding may receive a separate prison term under section 667.71 for each of the new convictions; and (3) whether a court should apply both the Three Strikes law and the habitual sexual offender statute in determining the sentence of a defendant who meets the criteria of both statutes. We conclude that defendant's prior conviction under section 288a constitutes a strike, that section 667.71 authorizes imposition of a term for each of his new qualifying convictions, and that his sentence for each new conviction should be determined by applying the provisions of both the Three Strikes law and the habitual sexual offender statute.

## FACTS

As relevant here, an information filed July 2, 1996, charged defendant Floyd E. Murphy, Jr., with two counts of violating section 288, subdivision (a)—committing a "lewd or lascivious act" on a child who is less than 14 years old, with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of himself or the child. As to each count, the information alleged that in May 1980 defendant sustained two qualifying prior convictions under the Three Strikes law, one for "oral copulation with child under 14 years, in violation of Section 288a[, subdivision] (c)," and the other for a "Lewd Act with child under 14 years, in violation of Section 288[, subdivision] (a)." The information also alleged that these prior convictions rendered defendant a habitual sexual offender under section 667.71. Finally, the information alleged that the prior conviction under section 288, subdivision (a), constituted a "serious felony" conviction for enhancement purposes under section 667, subdivision (a).

After hearing the evidence, the jury returned a guilty verdict on both counts. Defendant waived trial on the alleged prior convictions and admitted that he had previously been convicted under section 288a, subdivision (c), of

because the legislative and initiative versions of the Three Strikes law contain no substantive differences as to the issues before us, our discussion applies equally to both.

"oral copulation on a child under the age of 14 years" and under section 288, subdivision (a), of "lewd conduct with a child under the age of 14 years." The trial court sentenced defendant to a total unstayed prison term of 50 years to life, consisting of a consecutive term of 25 years to life for each conviction. The court explained: "Now, that sentence is pursuant to the provisions of [section] 667 sub[division] (b) through sub[division] (i) [the Three Strikes law]. It's also subject to the provisions of [section] 667.71 . . . ."

On appeal, defendant argued in part that the trial court committed the following sentencing errors: (1) treating his prior conviction under section 288a, subdivision (c), as a strike under the Three Strikes law; (2) relying on section 667.71 to impose a consecutive term for each of his new convictions; and (3) sentencing him under both section 667.71 and the Three Strikes law. The Court of Appeal rejected all of these arguments, finding that defendant's prior conviction under section 288a, subdivision (c), constituted a strike under the Three Strikes law, that section 667.71 authorized a consecutive term of 25 years to life for each of defendant's new convictions, and that each of those terms had to be tripled under the Three Strikes law (§ 667, subd. (e)(2)(A)(i)) because defendant had two prior strikes. For several reasons, however, it vacated defendant's sentence and remanded for resentencing, directing the trial court to consider various sentencing issues.

We then granted defendant's petition for review.

DISCUSSION

I. *Defendant's Section 288a Conviction Is a Strike*

A strike under the Three Strikes law is a prior conviction for any offense that, as of June 30, 1993 (§ 667, subd. (h)), was "defined in subdivision (c) of Section 667.5 as a violent felony or . . . defined in subdivision (c) of Section 1192.7 as a serious felony in this state." (§ 667, subd. (d)(1).) **(1a)** In arguing that defendant's prior conviction under section 288a, subdivision (c), for oral copulation with a child under 14 years of age is a strike, the Attorney General relies principally on subdivision (c)(6) of section 1192.7 (section 1192.7(c)(6)). Under section 1192.7(c)(6), a "lewd or lascivious act on a child under the age of 14 years" is a "serious" felony. Citing *People v. Henderson* (1987) 195 Cal.App.3d 1235 [241 Cal.Rptr. 461], the Attorney General argues that an act of oral copulation with a child under 14 years of age is lewd per se, i.e., it necessarily constitutes a lewd act on a child within the meaning of section 1192.7(c)(6).

Defendant disagrees, arguing that the language of section 1192.7(c)(6)— "lewd or lascivious act on a child under the age of 14 years"—is an "obvious

reference . . . to a violation of section 288, subdivision (a)." The latter section provides in relevant part: "Any person who willfully and lewdly commits any lewd or lascivious act . . . upon or with the body, or any part or member thereof, of a child who is under the age of 14 years, with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of that person or the child, is guilty of a felony . . . ." (§ 288, subd. (a).) Defendant reasons that because this language "closely matches" the language of section 1192.7(c)(6), "the 'serious felony'" that section 1192.7(c)(6) defines "is a violation of section 288, subdivision (a)." Defendant then asserts that because section 288, subdivision (a), "necessarily includes the specific intent to arouse, appeal to, or gratify the lust, passions or sexual desires of one of the participants" and oral copulation of a child under section 288a, subdivision (c), is "a *general intent* crime," "it is possible to commit a violation of section 288a, subdivision (c) *without* committing a lewd or lascivious act upon a child under 14." Thus, defendant asserts, his conviction under section 288a, subdivision (c), is not a "serious felony" conviction under section 1192.7(c)(6).

■ As in any case involving statutory interpretation, our fundamental task here is to determine the Legislature's intent so as to effectuate the law's purpose. (*White v. Ultramar, Inc.* (1999) 21 Cal.4th 563, 572 [88 Cal.Rptr.2d 19, 981 P.2d 944].) We begin by examining the statute's words, giving them a plain and commonsense meaning. (*Garcia v. McCutchen* (1997) 16 Cal.4th 469, 476 [66 Cal.Rptr.2d 319, 940 P.2d 906].) We do not, however, consider the statutory language "in isolation." (*Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299].) Rather, we look to "the entire substance of the statute . . . in order to determine the scope and purpose of the provision . . . . [Citation.]" (*West Pico Furniture Co. v. Pacific Finance Loans* (1970) 2 Cal.3d 594, 608 [86 Cal.Rptr. 793, 469 P.2d 665].) That is, we construe the words in question " 'in context, keeping in mind the nature and obvious purpose of the statute . . . .' [Citation.]" (*Ibid.*) We must harmonize "the various parts of a statutory enactment . . . by considering the particular clause or section in the context of the statutory framework as a whole." (*Moyer v. Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 230 [110 Cal.Rptr. 144, 514 P.2d 1224]; see also *Woods v. Young* (1991) 53 Cal.3d 315, 323 [279 Cal.Rptr. 613, 807 P.2d 455]; *Title Ins. & Trust Co. v. County of Riverside* (1989) 48 Cal.3d 84, 91 [255 Cal.Rptr. 670, 767 P.2d 1148]; *Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1387 [241 Cal.Rptr. 67, 743 P.2d 1323].)

■ Applying these principles, we disagree with defendant. We first observe that defendant's argument is inconsistent with the plain language of

section 1192.7(c)(6). An act of oral copulation on a child under 14 years of age by a person more than 10 years older than the child is a lewd or lascivious act under the common and ordinary meaning of those words.[2] Moreover, as defendant acknowledges, section 1192.7(c)(6) contains "no direct reference to section 288." By contrast, both the electorate and the Legislature have enacted other criminal statutes that define the triggering conduct or circumstance by express reference to a lewd and/or lascivious act on a child "in violation of [s]ection 288." (§§ 190.2, subd. (a)(17)(E) ["lewd or lascivious act upon the person of a child under the age of 14 years in violation of Section 288"], 999*l*, subd. (a) ["lewd acts on a child under 14, in violation of Section 288"], 1202.1, subd. (e)(6) ["[l]ewd or lascivious acts with a child in violation of Section 288"], 2962, subd. (e)(2)(I) ["[l]ewd acts on a child under the age of 14 years in violation of Section 288"], 11160, subd. (d)(20) ["[l]ewd and lascivious acts with a child, in violation of Section 288"].) Thus, the electorate and the Legislature have both shown that they know how to use language expressly requiring a violation of section 288 when that is their intent. The omission of such language from section 1192.7(c)(6)—which the voters enacted by initiative and the Legislature subsequently amended—undermines defendant's assertion that it "obvious[ly] refer[s] . . . to a violation of section 288, subdivision (a)." Indeed, defendant concedes that this omission "argu[ably]" shows an "inten[t] to broaden the number and type of acts that f[a]ll within the purview of" section 1192.7(c)(6) beyond those acts within section 288's scope.

In resisting the statute's plain language, defendant relies in part on the Legislature's 1986 revision of section 1192.7(c)(6). As originally enacted in

---

[2]The dissent errs in asserting that in *People v. Martinez* (1995) 11 Cal.4th 434 [45 Cal.Rptr.2d 905, 903 P.2d 1037] (*Martinez*), we based our conclusion that section 288 is violated by any touching of an underage child with the requisite sexual intent on "the common and ordinary meaning of" the phrase " 'lewd or lascivious act.' " (Dis. opn. of Mosk, J., *post*, at p. 161.) On the contrary, in *Martinez*, we refused to adopt a "hyperliteral" reading of this phrase that would contravene legislative intent or produce anomalous results, and instead interpreted it with reference to other language in section 288 that, "[a]s commonly understood, . . . refer[s] to . . . 'sexual motivation.' [Citation.]" (*Martinez, supra,* 11 Cal.4th at p. 449.) Regarding the "ordinary meaning" of the phrase "lewd or lascivious act," we simply said that "[n]othing" in it "refers to particular forms of physical contact or sexual activity." (*Ibid.,* fn. omitted.) To support this conclusion, we noted that " '[t]he relevant dictionary meaning of "lewd" is "sexually unchaste or licentious," "dissolute, lascivious," "suggestive of or tending to moral looseness," "inciting to sensual desire or imagination," "indecent, obscene, salacious." (Webster's New Internat. Dict. (3d ed. 1961) p. 1301.)' Similarly, the word 'lascivious' means 'tending to arouse sexual desire'; it is synonymous with 'lewd, lustful,' 'libidinous, salacious.' (*Id.* at p. 1274.)" (*Martinez, supra,* 11 Cal.4th at p. 449, fn. 15.) Contrary to the dissent's view, this discussion and the dictionary definition *Martinez* cited support our conclusion that oral copulation on a child under 14 years of age by a person more than 10 years older than the child is a lewd or lascivious act as those words are commonly understood.

1982 through Proposition 8, section 1192.7(c)(6) defined the term "serious felony" to include "lewd acts on a child under the age of 14 years." (Former § 1192.7(c)(6), added by Prop. 8, § 7, enacted by voters, Primary Elec. (June 8, 1982).) In 1986, the Legislature revised this provision into its current form: "lewd *or lascivious* act on a child under the age of 14 years." (§ 1192.7(c)(6), as amended by Stats. 1986, ch. 489, § 1, p. 1809, italics added.) According to defendant, the amended statute's "use [of] the precise statutory language from the definition of a violation of section 288, subdivision (a)" shows that the Legislature "intended [section 1192.7(c)(6)] to identify . . . the felony defined in section 288, subdivision (a)."

We find defendant's analysis unpersuasive. Defendant is correct that the amended version of section 1192.7(c)(6) precisely matched *some* of the language of section 288, subdivision (a): the single phrase, "lewd or lascivious act." However, it did not match *all* of section 288, subdivision (a)'s language; as relevant here, it omitted the requirement that the perpetrator acted "with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of that person or the child . . . ." (§ 288, subd. (a).) By contrast, the same 1986 legislation also reworded subdivision (c)(18) of section 1192.7 to *completely* "duplicate[] the definition of first degree burglary in effect at the time . . . ." (*People v. Cruz* (1996) 13 Cal.4th 764, 768 [55 Cal.Rptr.2d 117, 919 P.2d 731].) This difference suggests that the Legislature did not, as defendant asserts, intend the 1986 revision of section 1192.7(c)(6) "to identify . . . the felony defined in section 288, subdivision (a)." Had that been the Legislature's intent, it most likely would have either expressly referenced a violation of section 288 or, as it did in simultaneously revising the subdivision relating to first degree burglary, incorporated *all* of section 288, subdivision (a)'s language.[3]

---

[3]The dissent makes the same error as defendant in reasoning that the 1986 amendment "rendered" section 1192.7(c)(6)'s language "virtually identical to" that of section 288. (Dis. opn. of Mosk, J., *post*, at p. 162.) Moreover, unlike the dissent, we find the legislative history of the 1986 amendment inconclusive at best. The dissent cites several legislative reports that state the amendment's purpose was to "conform" section 1192.7, subdivision (c), to " 'the appropriate Penal Code section provisions.' " (Dis. opn. of Mosk, J., *post*, at pp. 162-163.) However, as the dissent also notes, one of those reports also explained that after the amendment, the statute, which originally applied only to " '[s]pecified lewd acts' . . . would apply as well *to* ' "lascivious" acts per P.C. Sec. 288.' " (Dis. opn. of Mosk, J., *post*, at p. 162.) These statements can reasonably be read as indicating a legislative intent simply to expand section 1192.7(c)(6) to include all section 288 violations, not to restrict it only to such violations. Given the absence of a reference to section 288 in section 1192.7(c)(6), the significant difference we have identified in the language of the two statutes, and the anomalous consequences of the dissent's interpretation (see *post*, p. 148), we therefore do not believe the legislative history of the 1986 amendment justifies reading section 288's express and detailed sexual intent requirement into the more broadly worded section 1192.7(c)(6).

In support of his interpretation, defendant also suggests that limiting section 1192.7(c)(6) to violations of section 288, subdivision (a), is consistent with the structure of section 1192.7, subdivision (c). According to defendant, "[a]ll of the other 'serious felonies' set forth in subdivision (c) of section 1192.7 describe specific offenses, or offenses that are committed in a specific manner . . . . There is no other 'serious felony' listed in subdivision (c) of section 1192.7 where a broad category of *conduct* is proscribed."

Defendant's argument fails to recognize that in prior decisions construing section 1192.7 we " 'rejected the view that section[] . . . 1192.7 consist[s] only of specific statutory offenses and enhancements. In so doing, [we] noted that although Proposition 8's serious felony enhancement provisions appear to be largely based upon section 12021.1, subdivision (b)'s list of violent offenses, they also include items describing nonviolent criminal conduct which do not precisely correspond to the elements of any preexisting criminal offense. [Citations.] [We] reasoned [that] the inclusion of these items evidenced the voter's intention to deter certain criminal conduct regardless of whether it refers to specific criminal offenses because it is perceived as dangerous and deserving of additional punishment when committed by recidivists. [We] therefore concluded [that] the enhancement provisions enacted by Proposition 8 refer to the criminal *conduct* described therein, *not* to specific criminal *offenses* and thus these provisions apply whenever the prosecution pleads and proves the specified conduct. [Citation.]' (Italics in original.) [Citation.]" (*People v. Equarte* (1986) 42 Cal.3d 456, 463-464 [229 Cal.Rptr. 116, 722 P.2d 890].)

Defendant also relies on our decision in *Martinez, supra,* 11 Cal.4th 434. Citing *Martinez,* he asserts that "[a]n act with an underage child becomes 'lewd or lascivious' depending entirely upon the sexual motivation and intent with which it is committed." "Accordingly," defendant asserts, "to constitute a 'lewd or lascivious act on a child under 14 years' [within the meaning of section 1192.7(c)(6)], there is a specific intent that must accompany the act. That specific intent element is entirely missing from a violation of section 288a."

Defendant misconstrues *Martinez.* There, the defendant argued that section 288's express terms—"any lewd or lascivious act" committed "with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of [the perpetrator] or the child"—require proof of *both* an "inherently" lewd or lascivious act *and* the specified "sexual 'intent.' " (*Martinez, supra,* 11 Cal.4th at p. 442.) We rejected this argument and reaffirmed the long-held view that " 'any touching' of an underage child committed with the intent to sexually arouse either the defendant or the child" establishes a

section 288 violation. (*Martinez, supra*, 11 Cal.4th at p. 442.) As defendant observes, in reaching this conclusion, we stated: "[W]e can only conclude that the touching of an underage child is 'lewd or lascivious' and 'lewdly' performed depending entirely upon the sexual motivation and intent with which it is committed." (*Id.* at p. 449.)

Defendant's argument takes this statement out of context. As our opinion explained, we granted review in *Martinez* "for the limited purpose of determining the acts necessary to sustain a conviction under . . . section 288." (*Martinez, supra*, 11 Cal.4th at p. 438.) In making this determination, we stressed the "basic purpose" of that statute: "to provide children with 'special protection' from sexual exploitation" because they "are 'uniquely susceptible' to such abuse" and "suffer profound harm whenever they are perceived and used as objects of sexual desire. [Citation.] . . . [S]uch concerns cannot be satisfied unless the kinds of sexual misconduct that result in criminal liability are greatly expanded where children are concerned." (*Id.* at pp. 443-444.) We found this purpose reflected in section 288's "broad and amorphous language," which "differs markedly from other statutes in the same 'family' of crimes. [Citation.] In particular, other felony sex offenses prohibit the commission of certain clearly specified acts . . . [and] describe[] the criminal act in precise and clinical terms." (*Martinez, supra*, 11 Cal.4th at pp. 442-443.) We concluded that the absence of such precise language in section 288 "was deliberate" and disclosed the Legislature's intent "to include sexually motivated conduct not made criminal elsewhere in the scheme. [Citation.]" (*Martinez, supra*, 11 Cal.4th at p. 443.) We then explained that although "children are routinely cuddled, disrobed, stroked, examined, and groomed as part of a normal and healthy upbringing," these "intimate acts may also be undertaken for the purpose of sexual arousal. Thus, depending upon the actor's motivation, innocent or sexual, such behavior may fall within or without the protective purposes of section 288." (*Martinez, supra*, 11 Cal.4th at p. 450.) Given all of these considerations, we reaffirmed that "the 'gist' " of the crime section 288 defines is "the defendant's intent to sexually exploit a child, not the nature of the offending act. [Citation.]" (*Martinez, supra*, Cal.4th at p. 444.) We thus concluded that "the lewd character of an activity cannot logically be determined separate and apart from the perpetrator's intent. . . . [A]ny other construction could exempt a potentially broad range of sexually motivated and harmful contact from the statute's reach. In light of the statutory purpose, we cannot conceive that the Legislature intended such a result. [Fn. omitted.]" (*Id.* at p. 450.)

Understood in this context, the statement defendant cites from *Martinez, supra*, 11 Cal.4th at page 450, does not establish that whether an act is "lewd

or lascivious" *within the meaning of section 1192.7(c)(6)* "depend[s] entirely upon the [perpetrator's] sexual motivation and intent." *Martinez* defined "lewd or lascivious act" *only* for purposes of applying section 288 and in light of that statute's basic purpose: to expand the kinds of criminal sexual misconduct where children are concerned by reaching sexually motivated conduct not otherwise made criminal. Section 288 thus is part of a statutory scheme that recognizes that some touchings of children are *always* harmful and improper, whereas others may or may not be, depending upon the actor's intent. To address the former, the Legislature passed statutes—like section 288a, subdivision (c)(1)—that precisely describe the inherently harmful acts and prohibit them in all circumstances. To address the latter, the Legislature passed section 288. And to implement this statutory scheme, *Martinez* reaffirmed a broad definition of a lewd or lascivious act that includes *any* touching committed with the intent section 288 describes, so as to *extend* protection *beyond* the inherently lewd acts precisely described and prohibited by the other statutes in the family of felony sex offenses. Defendant thus errs in now attempting to use *Martinez's* *expanded* definition to *narrow* section 1192.7(c)(6) and to *exclude* from its scope oral copulation on a child, which is an act that is always harmful, always improper, and always lewd, regardless of the perpetrator's intent. Although section 1192.7(c)(6) certainly includes acts that, because of the perpetrator's intent, are lewd or lascivious under *Martinez* and section 288, it is not limited to those acts.[4]

Indeed, our decision in *People v. Pearson* (1986) 42 Cal.3d 351 [228 Cal.Rptr. 509, 721 P.2d 595], which defendant cites, is inconsistent with his argument that precisely described criminal acts like oral copulation on a child are not lewd or lascivious where the perpetrator lacks the intent section 288 specifies. In *Pearson*, we held that the offense section 288 describes "is not a lesser included offense of statutory sodomy" with a child under the age of 14 years (§ 286). (*Pearson, supra*, 42 Cal.3d at p. 355.) Arguing to the contrary, the defendant in *Pearson* asserted "that 'it is inconceivable that a person can engage in sodomy on a child without at the same time committing a lewd and lascivious act on that child.'" (*Id.* at p. 356.) We agreed that defendant's assertion was "accurate in a moral sense . . . ." (*Ibid.*) However, we also "found . . . that as sodomy is a general intent crime, while a lewd act on a child [under section 288] requires proof of the specific intent" that the statute describes, "the latter is not necessarily included in the former." (*People v. Griffin* (1988) 46 Cal.3d 1011, 1030 [251 Cal.Rptr. 643,

---

[4]Responding to one of the defendant's arguments in *Martinez*, we cited section 1192.7, subdivision (c), as one of the many statutes into which section 288 "has been incorporated by reference . . . ." (*Martinez, supra*, 11 Cal.4th at p. 446 & fn. 9.) In making this statement, we meant only that section 1192.7(c)(6) *includes* lewd or lascivious acts under section 288. We did not suggest that section 1192.7(c)(6) is limited to such acts. That question was not before us in *Martinez*.

761 P.2d 103].) We find no evidence that when the voters enacted section 1192.7(c)(6) or when the Legislature amended it, they understood and used the term "lewd" other than in its moral sense, which unquestionably includes defendant's act of orally copulating a child under 14 years of age. Indeed, in other statutes, the Legislature has characterized oral copulation on a child as "sexual assault" (§ 11165.1, subd. (a); Evid. Code, § 1036.2; Code Civ. Proc., §§ 128, subd. (d), 1219, subd. (d)(1)), "sexual abuse" (§ 11165.1, subd. (a)), a "sexually violent offense" (Welf. & Inst. Code, § 6600.1), and "substantial sexual conduct" (§ 1203.066, subd. (b)).

In contrast, defendant's construction of section 1192.7(c)(6) would produce a result inconsistent with what he maintains was the voters' intent in enacting section 1192.7: "to distinguish between those felony charges that were deemed 'serious,' and those that were not, and to prohibit plea bargaining for the former." Defendant fails to explain how this purpose would be served by excluding from the statute's reach an act of oral copulation on a child under 14 years of age by a person more than 10 years older than the child. Such an act, with its destructive impact on the child, is no less serious under the theoretical circumstance defendant suggests, i.e., the perpetrator's intent is "sadistic" rather than "sexual." The same is true of an act of sodomy on a child under 14 years of age by a person more than 10 years older than the child (§ 286, subd. (c)(1)); "[a] child victim suffers no less from . . . sodomy undertaken for the purpose of punishment than he or she does from . . . sodomy performed for the purpose of sexual gratification." (*People v. Whitham* (1995) 38 Cal.App.4th 1282, 1293 [45 Cal.Rptr.2d 571].) Yet, under defendant's interpretation, sodomy on a child also would not be a "serious felony" within the meaning of section 1192.7 absent proof of the perpetrator's "sexual" intent. Thus, defendant's construction of section 1192.7(c)(6) would not serve the very statutory purpose he identifies, i.e., to specify those serious felonies for which plea bargaining is prohibited. Moreover, because we cannot conceive that the voters or the Legislature intended to make the perpetrator's intent determinative of whether oral copulation and sodomy on a child are lewd or lascivious acts under section 1192.7(c)(6), we do not agree with defendant that his construction is one that the statute's " 'language and the circumstances of its application may reasonably permit.' "

Finally, we reject defendant's suggestion that our construction of section 1192.7(c)(6) "renders the statute ambiguous in the extreme" and "unconstitutionally vague." Defendant argues that a criminal "whose victim is under 14 is left to guess at whether a conviction he suffers will be treated as a 'strike' in the future." We need only respond that defendant acted under no

such uncertainty here; he cannot reasonably or justifiably maintain that *he* was "left to guess" as to whether orally copulating a child under 14 was a lewd or lascivious act. Indeed, he does not even argue otherwise. Rather, in raising the vagueness issue, he states: "For example, the uncertainty in a felony conviction of section 647.6, could not be resolved at the time of the conviction," but would "depend upon what information was put in the record, and how a court in the future viewed the defendant's intent."

■ However, a defendant who falls "squarely within" the reach of a statute lacks standing to challenge its vagueness as it "might be hypothetically applied to the conduct of others . . . ." (*Parker v. Levy* (1974) 417 U.S. 733, 756 [94 S.Ct. 2547, 2561, 41 L.Ed.2d 439].) We "are not obliged" to consider every conceivable situation that might arise under a statute's language if we can give it a " 'reasonable and practical construction' " that accords with the drafters' probable intent and encompasses the defendant's conduct. (*Bowland v. Municipal Court* (1976) 18 Cal.3d 479, 492 [134 Cal.Rptr. 630, 556 P.2d 1081].) Here, because section 1192.7(c)(6) "clearly applies to [defendant's] conduct," and he does not argue that it improperly prohibits a substantial amount of constitutionally protected conduct, he may not challenge it on vagueness grounds. (*Tobe v. City of Santa Ana* (1995) 9 Cal.4th 1069, 1095 [40 Cal.Rptr.2d 402, 892 P.2d 1145].)

■ Thus, we conclude that the trial court correctly found defendant's prior conviction under section 288a, subdivision (c), to be a strike under the Three Strikes law.[5]

## II. *Section 667.71 Permits a Separate Term for Each New Conviction*

Section 667.71, subdivision (a), defines a "habitual sexual offender" as "a person who has been previously convicted of one or more of" certain specified offenses "and who is convicted in the present proceeding of one of those offenses." A person who meets this statutory definition "is punishable by imprisonment in the state prison for 25 years to life." (§ 667.71, subd. (b).)

■ Defendant maintains, contrary to the Court of Appeal, that section 667.71 does not authorize imposition of a separate prison term for each of

---

[5]Given our conclusion, we need not address the Attorney General's alternative contention that defendant's section 288a conviction is a strike under section 1192.7, subdivision (c)(5), which defines "serious felony" to include "oral copulation by . . . duress . . . ." Defendant also contends in his briefs that his prior convictions cannot be considered because, before he admitted them, the trial court failed to advise him of the admission's penal consequences. We decline to address this issue because defendant did not mention it in his petition for review, it is not fairly included in the issues the petition stated, and the Attorney General did not file an answer to the petition. (See Cal. Rules of Court, rules 28(e)(2), 29.2(b), 29.3(c); *People v. Venegas* (1998) 18 Cal.4th 47, 95, fn. 42 [74 Cal.Rptr.2d 262, 954 P.2d 525].)

his new convictions, but authorizes only a single term of 25 years to life. He argues that "a defendant sentenced under section 667.71 is not being sentenced for each of his current offenses, but rather for his status as a habitual sexual offender. Once that status is established [by proof of the requisite prior and current convictions], the punishment under subdivision (b) of section 667.71 is set at 25 years to life. There is nothing in subdivision (b) of section 667.71 that indicates a defendant is to receive a separate term of 25 years to life for *each* new qualifying sexual offense. Rather, the new offenses are used to establish the defendant's status as a 'habitual sexual offender', and once that status is established, the defendant's punishment is set." Thus, defendant contends that at most, he may be punished for his current convictions based on his "status" under section 667.71 as a habitual sexual offender "by a single indeterminate term of 25 years to life."

In *People v. Jenkins* (1995) 10 Cal.4th 234 [40 Cal.Rptr.2d 903, 893 P.2d 1224] (*Jenkins*), we rejected a similar argument in applying section 667.7. Section 667.7, subdivision (a), defines "a habitual offender" as "[a]ny person convicted of a felony in which the person inflicted great bodily injury as provided in Section 12022.53 or 12022.7, or personally used force which was likely to produce great bodily injury, who has served two or more prior separate prison terms as defined in Section 667.5 for" certain listed offenses. Under the statute as relevant here, a habitual offender who has served two qualifying prior separate prison terms "shall be punished by imprisonment in the state prison for life . . . ." (§ 667.7, subd. (a)(1).) The defendant in *Jenkins* was a habitual offender under section 667.7 because after serving two prior qualifying separate prison terms, he was convicted in a new proceeding of three qualifying offenses. (*Jenkins, supra,* 10 Cal.4th at p. 239.)

Among the issues we addressed in *Jenkins* was "whether a defendant, who is convicted of a number of serious felonies, each of which separately qualifies the defendant for a life sentence under section 667.7, may be sentenced to only a single life sentence under section 667.7, or may be sentenced to consecutive life sentences." (*Jenkins, supra,* 10 Cal.4th at p. 254.) We held that the statute permits a consecutive life sentence for each new conviction, explaining: "Section 667.7, like other recidivist punishment statutes that provide for more severe sentences for repeat offenders, specifies the applicable sentence for a present conviction of a qualifying felony committed by a defendant with a recidivist criminal history. *Although the defendant's status invokes the increased sentence, it is the new criminal conduct—and in particular one or more specific felony convictions—for which the defendant presently is being punished.* Nothing in the language of section 667.7 precludes imposition of additional terms consecutive to the habitual

offender life term when those additional terms arise from separate, independent counts of current substantive crimes, and section 669 explicitly provides, in relevant part, that '[l]ife sentences, whether with or without the possibility of parole, may be imposed to run consecutively with one another . . . .' " (*Jenkins, supra,* 10 Cal.4th at pp. 254-255, italics added.) In *Jenkins,* we further noted that although section 667.7 permitted consecutive sentencing for the defendant's current convictions, "nothing" in its language "*compel*[*led*]" consecutive sentencing; thus, "[i]n imposing such life terms, the trial court retain[ed] discretion under section 669 to order that these terms be served either concurrently or consecutively." (*Jenkins, supra,* 10 Cal.4th at p. 256.)

Our reasoning in *Jenkins* applies equally to section 667.71, which is a recidivist punishment statute like section 667.7. Contrary to defendant's assertion that "the statutory scheme in section 667.7 is very different from that set forth in section 667.71," we agree with the Court of Appeal that the two statutes operate similarly. Both prescribe an indeterminate sentence for a defendant who is convicted of a listed offense after having been previously convicted of those listed offenses (and, under § 667.7, having served at least two prior separate prison terms for the prior convictions). Thus, although, as defendant argues, his status as a habitual sexual offender invokes the increased sentence under section 667.71, it is his new criminal conduct—and in particular one or more specific felony convictions—for which he presently is being punished. Defendant can point to nothing in section 667.71's language that precludes imposition of additional terms consecutive to the habitual sexual offender indeterminate term when those additional terms arise from separate, independent counts of current substantive crimes. And section 669 explicitly provides, in relevant part, that "[l]ife sentences, whether with or without the possibility of parole, may be imposed to run consecutively with one another . . . ." Following *Jenkins,* we therefore conclude that section 667.71 authorizes separate consecutive sentences of 25 years to life for each of defendant's new convictions.

We reject defendant's claim that this conclusion "does not comport with [section 667.71's] legislative history." In making this argument, defendant cites the Legislative Counsel's description of the 1994 legislation that enacted the applicable version of the statute. The Legislative Counsel's Digest for that legislation states in relevant part: "Under existing law, a habitual sexual offender, as defined, is punishable by 25 years in the state prison or, under certain circumstances, 25 years to life . . . . [¶] This bill would, instead, specify that a habitual sexual offender is punishable by imprisonment in state prison for 25 years to life . . . ." (Legis. Counsel's Dig., Sen. Bill No. 26 (1993-1994 1st Ex. Sess.) 5 Stats. 1994, Summary

Dig., p. 575.) Defendant asserts that "[n]owhere" in this summary "did the Legislative Counsel indicate that a habitual sexual offender could be punished by 25 years to life for *each* new conviction." However, defendant cites nothing in the summary that indicates to the contrary, i.e., that a habitual sexual offender may *not* receive a life sentence for each new conviction. The legislative history simply does not speak to this question. Thus, nothing supports defendant's claim that the conclusion *Jenkins* compels fails to comport with section 667.71's legislative history.

Defendant also contends that in construing section 667.71, we should not "analogiz[e] to section 667.7," but instead "should look at section 667.72." He asserts that the latter statute, which was "enacted at the same time as section 667.71 [citation], provides for a single determinate term of 25 years" for a " 'habitual child molester,' " i.e., someone who "has previously served a prior prison term for a forcible child molestation conviction and 'is convicted in the present proceeding of the same offense against at least *two separate victims*.' [Citation.]" Defendant then argues that if section 667.71 authorizes a consecutive life term for each new conviction, a defendant with a qualifying prior conviction "gets *less time* for two new violations against *separate* victims (under § 667.72) than he does for two new violations against the *same* victim. (§ 667.71.)"

For a number of reasons, we reject defendant's argument. First, section 667.72 is no longer effective; the Legislature repealed it in October 1999, noting that the conduct it punished is "subject to greater punishment under Section 667.71 . . . ." (Stats. 1999, ch. 706, §§ 9, 17.) Thus, the Legislature clearly recognized and intended that section 667.71's application would result in greater punishment than would application of former section 667.72.

Second, defendant errs in suggesting that even before the repeal, a defendant who committed two new qualifying offenses against *separate* victims would *necessarily* be sentenced under former section 667.72 instead of 667.71. Subdivision (c) of former section 667.72 provided: "At the request of the prosecutor and in lieu of the punishment specified in subdivision (b), the court shall instead order the defendant be punished according to Sections 1170.1 and 677.6, or according to Section 677.7 or *667.71*, if applicable." (Stats. 1993, ch. 558, § 1, p. 2797, italics added.) The relevant legislative history explains that in enacting former section 667.72, the Legislature recognized that "persons could be sentenced to a longer term of imprisonment under" other statutes and included subdivision (c) to enable prosecutors to "incapacitat[e] certain contemptible criminals for as long as possible . . . ." (Sen. Com. on Judiciary, Analysis of Assem. Bill No. 526 (1993-1994 Reg. Sess.) June 22, 1993, p. 4.) Thus, the Legislature intended that

section 667.71 would apply where it required greater punishment than former section 667.72.

Third, defendant cites nothing to support his assertion that under former section 667.72, a defendant committing two new qualifying offenses against *separate* victims would receive only a "single" determinate term of 25 years, rather than a term for each offense. Nothing in that section expressly provided for only a single term, and we have found no reported case addressing that (or any other) question under former section 667.72.[6] Moreover, courts have held that similar language in section 667.61, subdivision (e)(5)—which triggers a life term for a defendant "convicted in the present case or cases of committing a[] [specified] offense . . . against more than one victim"—authorizes a separate life term for each victim. (*People v. DeSimone* (1998) 62 Cal.App.4th 693, 698-700 [73 Cal.Rptr.2d 73] (*DeSimone*); *People v. Murphy* (1998) 65 Cal.App.4th 35, 40-41 [76 Cal.Rptr.2d 130]; *People v. Jones* (1997) 58 Cal.App.4th 693, 719 [68 Cal.Rptr.2d 506].) These decisions undercut the fundamental premise of defendant's argument under former section 667.72 (although we express no opinion about their correctness).[7]

In any event, the evolution of section 667.71's language shows that the Legislature did not intend the applicable version of section 667.71 to operate like former section 667.72. In language similar to former section 667.72, section 667.71 originally defined a habitual sexual offender as a person who had served at least one prior prison term for a listed offense and who was "[c]onvicted in the present proceeding" of either "two separate [listed] offenses . . . against two separate victims" or "at least three separate [listed] offenses . . . against at least three separate victims." (Stats. 1993, ch. 590, § 2, p. 3096.) In 1994, the Legislature amended the definition of a habitual sexual offender to its current form, i.e., "a person who has been previously convicted of one or more of the [listed] offenses . . . and who is convicted

---

[6]This lack of case authority apparently stems from the statute's nonuse. A committee analysis of the legislation repealing section 667.72 stated: "According to the author's background material obtained from the Department of Corrections (the sponsor of this bill), the habitual child molester statute has never been used." (Assem. Com. on Public Safety, Analysis of Assem. Bill No. 1236 (1999-2000 Reg. Sess.) as amended Apr. 5, 1999, p. 3.) We grant defendant's request that we take judicial notice of this analysis and another committee report discussing the legislation that repealed former section 667.72.

[7]As defendant notes, subdivision (g) of section 667.61 provides that the specified life term "shall be imposed on the defendant once for any offense or offenses committed against a single victim during a single occasion. If there are multiple victims during a single occasion, the term specified . . . shall be imposed on the defendant once for each separate victim." The cases that we have cited construing section 667.61 considered a factual context this subdivision does not address—multiple victims on separate occasions—and hold that a separate term for each victim is proper under these circumstances.

in the present proceeding of one of those offenses." (§ 667.71, subd. (a), as amended by Stats. 1994, ch. 447, § 2, p. 2414 and Stats. 1994, 1st Ex. Sess., ch. 14, § 2, p. 8572.) Because the Legislature substantially revised section 667.71 by deleting language similar to that in former section 667.72, we reject defendant's argument that the two statutes should be interpreted similarly.

Thus, we conclude section 667.71 authorizes a separate term of 25 years to life for each of defendant's new convictions.

II. *Sentencing Under Both the Three Strikes Law and Section 667.71 Is Proper*

■ Defendant also contends that the Court of Appeal erred in concluding that the trial court could determine his sentence by applying both the Three Strikes law and section 667.71. Primarily, he argues that section 654 "is applicable in this circumstance to limit the trial court to one sentencing scheme." Section 654, subdivision (a), provides in relevant part: "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." Defendant asserts that applying both section 667.71 and the Three Strikes law violates this provision.

Defendant's claim fails under *People v. Coronado* (1995) 12 Cal.4th 145 [48 Cal.Rptr.2d 77, 906 P.2d 1232] (*Coronado*). There, we held in part that section 654 did not prohibit use of a prior conviction and resulting prior prison term both to elevate a driving under the influence charge to a felony under Vehicle Code former section 23175 and to trigger a one-year sentence enhancement under section 667.5, subdivision (b), for service of a prior prison term. (*Coronado, supra,* 12 Cal.4th at p. 149.) In reaching this result, we first explained that "[b]y its own terms, section 654 applies only to an 'act or omission' made punishable in different ways by different statutes." (*Coronado, supra,* 12 Cal.4th at p. 156.) We then discussed *People v. Rodriguez* (1988) 206 Cal.App.3d 517 [253 Cal.Rptr. 633] (*Rodriguez*), which "[i]n a closely analogous context . . . reasoned that prior prison term enhancements are not imposed for 'acts or omissions' within the meaning of [section 654]: . . . 'Both sections 666 and 667.5 apply to facts, not acts; they relate to the *status* of the recidivist offender engaging in criminal conduct, not to the conduct itself.' [Citations.]" (*Coronado, supra,* 12 Cal.4th at p. 157.) Finding this reasoning "persuasive," we explained: "[P]rior prison *term* enhancements are attributable to the defendant's status as a repeat offender [citations]; they are not attributable to the underlying criminal

conduct which gave rise to the defendant's prior and current convictions. Because the repeat offender (recidivist) enhancement imposed here does not implicate multiple punishment of an act or omission, section 654 is inapplicable." (*Coronado, supra,* 12 Cal.4th at p. 158; see also *DeSimone, supra,* 62 Cal.App.4th at p. 700 ["penalty provision which relates solely to a defendant's status as a repeat offender does not punish an 'act or omission' and is not subject to section 654"].) Similarly, as defendant points out, "the purpose of section 667.71 is *not* to punish especially aggravated instances of a particular crime," but to "serve[] the same purpose as the 'Three Strikes' law, which is to punish recidivism." Thus, both the Three Strikes law and section 667.71 apply to the *fact* of defendant's recidivism, not to an act or omission within the meaning of section 654. (See *People v. Benson* (1998) 18 Cal.4th 24, 34 [74 Cal.Rptr.2d 294, 954 P.2d 557] [unlike § 654, "which is concerned with the appropriate punishment for '[a]n act or omission that is punishable in different ways,' the Three Strikes law has, as its central focus, *the status* of the defendant as a repeat felon"].) Accordingly, under *Coronado*, application of both does not implicate section 654.

We reject defendant's assertion that a different analysis applies here because "the issue" in this case "is not an 'enhancement' of [his] sentence," but "the applicability of two separate and distinct methods by which [his] minimum indeterminate term could be calculated." As we have explained, in *Coronado* we quoted and endorsed *Rodriguez*, which found section 654 inapplicable to section 666 because the latter section applies to the fact of a defendant's recidivist status, not to an act or omission within the meaning of section 654. (*Coronado, supra,* 12 Cal.4th at p. 157; *Rodriguez, supra,* 206 Cal.App.3d at p. 519.) In *Coronado*, we also cited *People v. Price* (1992) 4 Cal.App.4th 1272, 1277 [6 Cal.Rptr.2d 263], which similarly held that section 654 does not apply to section 666. (*Coronado, supra,* 12 Cal.4th at p. 157.) Section 666 operates like the Three Strikes law and section 667.71; it does not establish an enhancement, but establishes an alternate and elevated penalty for a petty theft conviction when a recidivist defendant has served a prior term in a penal institution for a listed offense. (*People v. White Eagle* (1996) 48 Cal.App.4th 1511, 1517-1518 [56 Cal.Rptr.2d 749] (*White Eagle*); see also *People v. Dotson* (1997) 16 Cal.4th 547, 556 [66 Cal.Rptr.2d 423, 941 P.2d 56] [§ 1170.12, subd. (c)(2)(A), does not establish an enhancement, but "prescribes a method by which defendant's minimum indeterminate life term is calculated"]; *People v. Martin* (1995) 32 Cal.App.4th 656, 667 [38 Cal.Rptr.2d 776] [§ 667, subd. (e)(1) does not establish an enhancement, but "defines the term for the crime itself"], disapproved on another ground in *People v. Deloza* (1998) 18 Cal.4th 585, 600, fn. 10 [76 Cal.Rptr.2d 255, 957 P.2d 945]; cf. *People v. Jefferson* (1999) 21 Cal.4th 86, 101 [86 Cal.Rptr.2d 893, 980 P.2d 441] [explaining the difference between an enhancement and

a statute establishing an "*alternate* penalty for the underlying felony" when "the defendant has satisfied" specified conditions].) The salient point is that imposition of the increased penalties these statutes prescribe depends on a fact—the defendant's status as a repeat offender—not on an act or omission within the meaning of section 654. (See *In re Foss* (1974) 10 Cal.3d 910, 922 [112 Cal.Rptr. 649, 519 P.2d 1073] [increased penalties under habitual offender statutes "are attributable to the defendant's status as a repeat offender"], overruled on another ground in *People v. White* (1976) 16 Cal.3d 791, 796-797, fn. 3 [129 Cal.Rptr. 769, 549 P.2d 537].) Section 654 therefore does not apply. (See *White Eagle*, *supra*, 48 Cal.App.4th at p. 1519 [finding § 654 inapplicable to sentencing under both Three Strikes law and § 666]; *People v. Sipe* (1995) 36 Cal.App.4th 468, 488 [42 Cal.Rptr.2d 266] [because application of Three Strikes law depends on defendant's "status as a recidivist offender," § 654 does not apply].)

The cases defendant cites do not hold to the contrary. In *People v. Jones* (1993) 5 Cal.4th 1142, 1144-1152 [22 Cal.Rptr.2d 753, 857 P.2d 1163] (*Jones*), we held that in enacting what is now subdivision (a) of section 667, the voters did not intend that a defendant's sentence would be enhanced for both a prior conviction (under the new statute) *and* the resulting prison term (under § 667.5). Because we based this conclusion on the relevant statutory language, we expressly declined to discuss section 654's impact. (*Jones*, *supra*, 5 Cal.4th at p. 1152.) In *People v. Flournoy* (1994) 26 Cal.App.4th 1695, 1697-1701 [32 Cal.Rptr.2d 188] (*Flournoy*), the court applied *Jones*'s analysis to hold that multiple enhancements for a single prior rape conviction are not permissible under both section 667.6, subdivision (a), and section 667, subdivision (a). As we did in *Jones*, the *Flournoy* court reached its conclusion by interpreting the statutes in light of the voters' intent and therefore expressly declined to discuss section 654's effect. (*Flournoy*, *supra*, 26 Cal.App.4th at p. 1699.) Thus, neither of these decisions supports defendant's section 654 argument.

We also reject defendant's related claim, based on section 1170, subdivision (b), and California Rules of Court, former rule 420(c) (renumbered rule 4.420, eff. Jan. 1, 2001), that sentencing under both the Three Strikes law and section 667.71 violates "the various proscriptions against dual use of facts for sentencing purposes." Defendant forfeited this argument by failing to raise it in the Court of Appeal. (*Associated Builders and Contractors, Inc. v. San Francisco Airports Com.* (1999) 21 Cal.4th 352, 379 [87 Cal.Rptr.2d 654, 981 P.2d 499].) Moreover, it fails on its merits. Where the governing statute specifies an upper, middle, and lower term for a crime, section 1170, subdivision (b), prohibits a court from imposing the upper term "by using the fact of any enhancement upon which sentence is imposed . . . ."

California Rules of Court, former rule 420(c) (present rule 4.420) also relates to the use of "a fact charged and found as an enhancement" as a basis for "imposing the upper term . . . ." Neither provision applies in this case, which involves calculation of defendant's term under the Three Strikes law and section 667.71, not the imposition of an upper term instead of a lower or middle term. (See *Jenkins*, *supra*, 10 Cal.4th at p. 252, fn. 10.)

Defendant also contends that application of both the Three Strikes law and section 667.71 is contrary to the Legislature's intent. In his view, the Three Strikes law and section 667.71 establish entirely separate and alternative sentencing schemes that "serve[] the same purpose . . . , which is to punish recidivism." Defendant argues that if someone "is subject to sentencing as a 'habitual sexual offender' [under section 667.71], it is almost certain he will also be subject to sentencing under the Three Strikes law. Had the Legislature intended that a habitual sexual offender's sentence be doubled or tripled in every case under the Three Strikes law, it would have so provided." Thus, defendant asserts, "it is clear" that section 667.71 and the Three Strikes law "were intended to operate independently of one another." Because "the Legislature, in enacting the Three Strikes law, intended for [it] to operate in lieu of section 667.71," a defendant "may be sentenced under either of the two sentencing schemes, but not both."

Unlike defendant, we find that the statutes disclose a legislative intent that the Three Strikes law apply *in addition to* section 667.71. Subdivision (f)(1) of section 667 provides that "[n]otwithstanding any other law," the Three Strikes law *"shall be applied in every case* in which a defendant has a prior felony conviction as defined in subdivision (d)." (Italics added.) Moreover, subdivision (e) of section 667 provides that *"in addition to* any other enhancement or punishment provisions which may apply," the sentencing provisions of the Three Strikes law *"shall* apply where a defendant has a prior felony conviction." (Italics added.) Through this section, the Three Strikes law "declares itself to 'apply' not exclusively, but rather *'in addition to* any other . . . punishment provisions which may apply' [citations] . . . ." (*People v. Alvarez* (1996) 14 Cal.4th 155, 247 [58 Cal.Rptr.2d 385, 926 P.2d 365].) Thus, the Legislature has expressly indicated that where a defendant has a qualifying prior felony conviction, the sentencing provisions of the Three Strikes law not only *must* be applied, they *must* be applied *in addition to* any other punishment provisions. " 'It is difficult to interpret the language of the statute in any other manner.' [Citations.]" (*People v. Dotson*, *supra*, 16 Cal.4th at p. 554; see also *White Eagle*, *supra*, 48 Cal.App.4th at pp. 1517-1518 [single prior conviction requires both alternate sentencing under § 666 for petty theft with a prior and doubling under Three Strikes law].)

Defendant cites nothing in either the Three Strikes law or section 667.71 that indicates the Legislature intended to exclude the latter statute from the mandatory terms of the former. In this regard, until its amendment in 1998, section 667.71 expressly specified the sentencing provisions that were exclusive alternatives to section 667.71. As originally enacted in 1993, before the Legislature passed the Three Strikes law, section 667.71 provided: "At the request of the prosecutor and in lieu of the punishment specified in [this section], the court shall order that the defendant be punished pursuant to Section 1170.1, 667.6, or 667.7, if applicable." (Stats. 1993, ch. 590, § 2, p. 3097 [former § 667.71, subd. (d)].) The Legislature amended this provision in September 1994, *after* the Three Strikes law took effect, by adding a reference *only* to the newly enacted section 667.61; it did not also add a reference to the new Three Strikes law. (Stats. 1994, ch. 447, § 2, p. 2414 and Stats. 1994, 1st Ex. Sess., ch. 14, § 2, p. 8572; see fn. 7, *ante*.) This provision was completely deleted in 1998. (Stats. 1998, ch. 925, § 3.) Nevertheless, the Three Strikes law's omission from the repealed provision that expressly specified the punishment *alternatives* to section 667.71 fully supports our conclusion that the Legislature intended the Three Strikes law to operate in addition to, not to the exclusion of, section 667.71.[8]

■ Under the guise of legislative intent, in his reply brief defendant argues for the first time that the Court of Appeal did not perform the correct sentence calculation under the provisions of the Three Strikes law. The Court of Appeal held that section 667, subdivision (e)(2)(A)(i), requires tripling of the sentence section 667.71 prescribes, so that defendant should receive a sentence of 75 years to life for each of his current offenses. Section 667, subdivision (e)(2)(A)(i), sets the minimum term of a third strike defendant's indeterminate life sentence under the Three Strikes law at "[t]hree times the term otherwise provided as punishment for each current felony conviction subsequent to the two or more prior felony convictions." Defendant now contests the Court of Appeal's calculation, arguing that it "fail[s] to consider that the term to be tripled is the term otherwise provided for the current felony conviction *subsequent* to the prior convictions." "In other words," defendant asserts, "the term to be tripled . . . is the term to which [he] otherwise would have been sentenced *without consideration of his prior convictions*," i.e., "the principal term referred to in section 1170.1, without reference to the prior convictions." Thus, defendant argues that for

---

[8]The repealed provision was operative when defendant committed the offenses and was sentenced in this case. However, the prosecution did not request that the trial court impose sentence under one of the alternative statutes the repealed provision specified; in both the information and a postconviction sentencing memorandum, the prosecution requested sentencing under the Three Strikes law and section 667.71. Nor did the trial court mention the specified alternative sentencing statutes. Thus, we disagree with the Court of Appeal's conclusion that sentencing under section 667.71 was discretionary in this case.

his current convictions under section 288, subdivision (a), only the eight-year aggravated term under that section should be tripled. "By including the prior convictions in the calculation of [his] sentence under section 667.71 and then tripling that term under section 667, subdivision (e)(2)(A)(i), . . . the Court of Appeal misread the legislative intent."[9]

Although we need not address this untimely argument (Cal. Rules of Court, rule 29(b)(1)), we reject it for its lack of merit. First, the plain language of the statute does not support defendant's statutory construction. As commonly understood, the statutory language in question—"subsequent to the two or more prior felony convictions"—simply identifies the relevant convictions whose terms are to be tripled and distinguishes them from the "two or more prior felony convictions" that trigger application of the third strike sentencing provision. (§ 667, subd. (e)(2)(A)(i).) It does not, as defendant suggests, direct that the punishment for the identified convictions be determined "without consideration of" or "reference to" the prior convictions. Indeed, in other sentencing statutes, the Legislature has shown that when it wants a sentence calculated without consideration of some circumstance, it knows how to use language clearly expressing that intent. (See § 1170.2 [length of imprisonment for certain inmates shall be determined "without consideration of good-time credit"].) The Three Strikes law's far different language suggests a different legislative intent. Second, defendant's argument is inconsistent with our decision in *People v. Nguyen* (1999) 21 Cal.4th 197 [87 Cal.Rptr.2d 198, 980 P.2d 905]. There, we stated that "[t]he common and ordinary meaning" of the statutory phrase, " 'the term otherwise provided as punishment,' " is "the term that would be imposed in the absence of the Three Strikes law." (*Id.* at p. 205.) Here, of course, the term that would be imposed absent the Three Strikes law is the term section 667.71 prescribes. Thus, the Court of Appeal's calculation was correct.

We therefore conclude that the Court of Appeal did not err in holding that the trial court could apply both the Three Strikes law and section 667.71 in sentencing defendant.

At oral argument, the Attorney General asserted that the Three Strikes law mandates consecutive sentencing for defendant's new crimes because he sustained in this proceeding "a current conviction for more than one felony count not committed on the same occasion, and not arising from the same set of operative facts . . . ." (§ 667, subd. (c)(6).) We leave it to the trial court

---

[9]Defendant does not contend more generally that section 667, subdivision (e)(2)(A)(i), does not apply to indeterminate terms. We express no opinion on that issue, which is related to an issue currently pending before us in *People v. Cornelius* (2000) 79 Cal.App.4th 771 [94 Cal.Rptr.2d 326], review granted July 26, 2000, S068743.

to consider this question on remand in conjunction with other sentencing matters the Court of Appeal identified, including defendant's request that one or both of his' prior convictions be struck under section 1385 in furtherance of justice. (See *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 [53 Cal.Rptr.2d 789, 917 P.2d 628].)

## DISPOSITION

The judgment of the Court of Appeal is affirmed, and the case is remanded to that court for further proceedings consistent with the views expressed in this opinion.

George, C. J., Kennard, J., Baxter, J., Werdegar, J., and Brown, J., concurred.

**MOSK, J.**—I dissent.

Notwithstanding any other law or provision of law, the "Three Strikes" law (Stats. 1994, ch. 12, § 1, p. 71, adding Pen. Code, § 667, subds. (b)-(i)); Prop. 184, § 1, as approved by voters, Gen. Elec. (Nov. 8, 1994), adding Pen. Code, § 1170.12) governs when a defendant is convicted of a felony or "strike" of any kind, and was previously convicted of one or more felonies or strikes defined as serious or violent (Pen. Code, §§ 667, subd. (c), 1170.12, subd. (a); see *id.*, §§ 667, subds. (d), (e), (f), 1170.12, subds. (b), (c), (d)).

Appellant had previously been convicted of, among other felonies, oral copulation with a person under 14 years of age in violation of Penal Code section 288a.

For purposes of the Three Strikes law, one of the felonies defined as serious (Pen. Code, §§ 667, subd. (d)(1), 1170.12, subd. (b)(1)) is a "lewd or lascivious act on a child under the age of 14 years" as enumerated in Penal Code section 1192.7, subdivision (c)(6) (Penal Code section 1192.7(c)(6)).

The question here is this: Is oral copulation with a person under 14 years of age in violation of Penal Code section 288a a "lewd or lascivious act on a child under the age of 14 years" within the meaning of Penal Code section 1192.7(c)(6)?

The majority answer, Yes, and proceed to affirm the judgment of the Court of Appeal, which gave the same answer below. They are wrong to do so.

What Penal Code section 288a requires for oral copulation with a person under 14 years of age is clear: The perpetrator must engage in an objectively sexual act, but need not possess any subjectively sexual intent. (See, e.g., *People v. Thornton* (1974) 11 Cal.3d 738, 765 [114 Cal.Rptr. 467, 523 P.2d 267], disapproved on another point in *People v. Flannel* (1979) 25 Cal.3d 668, 684, fn. 12 [160 Cal.Rptr. 84, 603 P.2d 1] (plur. opn.) & 686-687 (conc. opn. of Richardson, J.); *People v. Whitham* (1995) 38 Cal.App.4th 1282, 1293 [45 Cal.Rptr.2d 571]; *People v. Brocklehurst* (1971) 14 Cal.App.3d 473, 476 [92 Cal.Rptr. 340].)

What Penal Code section 1192.7(c)(6) means by a "lewd or lascivious act on a child under the age of 14 years" is also clear.

Penal Code section 1192.7(c)(6)'s "lewd or lascivious act on a child under the age of 14 years" undoubtedly covers a "lewd or lascivious act" on "a child who is under the age of 14 years" in violation of Penal Code section 288. In *People v. Martinez* (1995) 11 Cal.4th 434 [45 Cal.Rptr.2d 905, 903 P.2d 1037], we concluded, under what we took to be the common and ordinary meaning of the words in question, that Penal Code section 288 required this: The perpetrator must possess a subjectively sexual intent, but need not engage in any objectively sexual act.

But, to my mind, Penal Code section 1192.7(c)(6)'s "lewd or lascivious act on a child under the age of 14 years" does not extend beyond a "lewd or lascivious act" on "a child who is under the age of 14 years" in violation of Penal Code section 288. If it did in fact extend further, it would not carry any determinate sense in such part. And if it did indeed carry any such sense, it would not denote an objectively sexual act without regard to any subjectively sexual intent.

That Penal Code section 1192.7(c)(6)'s "lewd or lascivious act on a child under the age of 14 years" does not extend beyond a "lewd or lascivious act" on "a child who is under the age of 14 years" in violation of Penal Code section 288 is supported by its language. The phrase in the former provision is virtually identical to the phrase in the latter.

That Penal Code section 1192.7(c)(6)'s "lewd or lascivious act on a child under the age of 14 years" does not extend beyond a "lewd or lascivious act" on "a child who is under the age of 14 years" in violation of Penal Code section 288 is confirmed by its history.

As originally enacted by the voters through their approval of Proposition 8 at the Primary Election of June 8, 1982, Penal Code section 1192.7(c)(6)

referred to "lewd acts on a child under the age of 14 years." (Prop. 8, § 7, as approved by voters, Primary Elec. (June 8, 1982).)

As amended by the Legislature in 1986, Penal Code section 1192.7(c)(6) was made to refer to "lewd *or lascivious* acts on a child under the age of 14 years" (Stats. 1986, ch. 489, § 1, p. 1809, italics added), since changed from the plural to the singular.

Although without express citation, Penal Code section 1192.7(c)(6)'s "lewd or lascivious act on a child under the age of 14 years" was intentionally, and not coincidentally, rendered virtually identical to Penal Code section 288's "lewd or lascivious act" on "a child who is under the age of 14 years."

For example, one legislative report accompanying Assembly Bill No. 3733 (1985-1986 Reg. Sess.), the measure that would effect the amendment in question, stated as follows: "The . . . sponsor of this bill . . . claims that the differences in wording between Proposition 8 and related provisions of the Penal Code have led to confusion and may, in some cases, require special findings in order to apply Proposition 8 enhancements. Thus the proposed amendments are intended to conform Penal Code section 1192.7(c) . . . to the appropriate Penal Code section provisions. According to the sponsor, this would end any confusion caused by the differences in language, while keeping true to the intent of the electorate." (Sen. Com. on Judiciary, Analysis of Assem. Bill No. 3733 (1985-1986 Reg. Sess.) as amended June 4, 1986, p. 2; accord, Sen. Rules Com., Off. of Sen. Floor Analyses, Rep. on Assem. Bill No. 3733 (1985-1986 Reg. Sess.) as amended June 4, 1986, p. 2 [stating that the bill's purpose is "to conform" Pen. Code, § 1192.7(c) "to the appropriate Penal Code provisions"]; Assem. Com. on Pub. Safety, Republican Analysis of Assem. Bill No. 3733 (1985-1986 Reg. Sess.) Apr. 25, 1986, p. 1 [stating that the bill is "intended to conform the Prop. 8 serious felonies to the definitions of the crimes listed elsewhere in the Penal Code"].)

The same legislative report went on to state of Assembly Bill No. 3733 and its effect: As it then stood, Penal Code section 1192.7(c)(6) applied to "[s]pecified lewd acts"; as amended, it would apply as well to " 'lascivious' acts per P.C. Sec. 288." (Sen. Com. on Judiciary, Analysis of Assem. Bill No. 3733 (1985-1986 Reg. Sess.) as amended June 4, 1986, p. 3.)

Another legislative report was similar: Assembly Bill No. 3733 would amend Penal Code section 1192.7(c)(6) from "[l]ewd acts" to "[l]ewd or lascivious acts per Penal Code Section 288." (Assem. 3d reading analysis of

Assem. Bill No. 3733 (1985-1986 Reg. Sess.) June 5, 1986, p. 2, underscoring in original.)

Yet another legislative report was to the same effect: Assembly Bill No. 3733 would amend Penal Code section 1192.7(c)(6) from "lewd acts" to "lewd or lascivious acts per Penal Code § 288." (Assem. Com. on Public Safety, Analysis of Assem. Bill No. 3733 (1985-1986 Reg. Sess.) May 5, 1986, p. 1, underscoring in original.)

In a word, as we recognized in *Martinez*, Penal Code section 1192.7(c)(6) "incorporated" Penal Code section 288 "by reference." (*People v. Martinez, supra*, 11 Cal.4th at p. 446 & fn. 9.) Such was its purpose, and such was its effect.

Next, if Penal Code section 1192.7(c)(6)'s "lewd or lascivious act on a child under the age of 14 years" did in fact extend beyond a "lewd or lascivious act" on "a child who is under the age of 14 years" in violation of Penal Code section 288, it would not carry any determinate sense in such part. The language of Penal Code section 1192.7(c)(6) points to Penal Code section 288 and *only to Penal Code section 288*. The same is true of its history.

Finally, if Penal Code section 1192.7(c)(6)'s "lewd or lascivious act on a child under the age of 14 years" did indeed carry any determinate sense beyond a "lewd or lascivious act" on "a child who is under the age of 14 years" in violation of Penal Code section 288, it would not denote an objectively sexual act without regard to any subjectively sexual intent. If we were right to conclude in *Martinez* that Penal Code section 288's "lewd or lascivious act" on "a child who is under the age of 14 years" indicates a subjectively sexual intent without regard to any objectively sexual act, it is hard for us to conclude here that Penal Code section 1192.7(c)(6)'s "lewd or lascivious act on a child under the age of 14 years" indicates precisely the opposite—an objectively sexual act without regard to any subjectively sexual intent.

It follows, then, that the answer to the question posed above is this: Oral copulation with a person under 14 years of age in violation of Penal Code section 288a—which requires an objectively sexual act but not any subjectively sexual intent—is *not* a "lewd or lascivious act on a child under the age of 14 years" within the meaning of Penal Code section 1192.7(c)(6)—which requires a subjectively sexual intent but not any objectively sexual act.

In giving a contrary answer, the majority rely on the "plain language" (maj. opn., *ante*, at pp. 142, 143) of Penal Code section 1192.7(c)(6)'s "lewd

or lascivious act on a child under the age of 14 years," invoking the phrase's "common and ordinary meaning" (maj. opn., *ante*, at p. 143). We proceeded in like fashion in *Martinez* with respect to Penal Code section 288's "lewd or lascivious act" on "a child who is under the age of 14 years," focusing on that phrase "[a]s commonly understood" (*People v. Martinez, supra*, 11 Cal.4th at 449). The majority purport to distinguish the latter phrase from the former, but without identifying any difference. They do not even attempt to explain how virtually the same phrase can indicate, in *Martinez*, a subjectively sexual intent without regard to any objectively sexual act, with "intent" being "determinative," and, in this case, an objectively sexual act without regard to any subjectively sexual intent, with "intent" being altogether immaterial. (Maj. opn., *ante*, at p. 148.) Somewhat embarrassed by our statement in *Martinez* that Penal Code section 1192.7(c)(6) "incorporated" Penal Code section 288 "by reference" (*People v. Martinez, supra*, 11 Cal.4th at p. 446 & fn. 9), they assert that Penal Code section 1192.7(c)(6) includes Penal Code section 288, but is not limited thereto, pointing to the fact that it is not absolutely identical and does not cite it expressly. Such an assertion is little more than an engine to allow the expansion of the provision at will. For they do not even suggest what Penal Code section 1192.7(c)(6) may include *in addition to* Penal Code section 288. Without a doubt, the kind of perpetrator whom they target is scarcely worthy of sympathy. But, nevertheless, he is entitled to better than he receives at their hands.

In conclusion, I would reverse the judgment of the Court of Appeal as to sentence and remand the cause to that court for proceedings not inconsistent with the views expressed herein.

Appellant's petition for a rehearing was denied June 20, 2001.