Filed 9/1/20  P. v. Harris CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>           v.<br><br>DANIEL JAFAIN HARRIS,<br><br>      Defendant and Appellant. | F077649<br><br>(Super. Ct. No. MCR054240)<br><br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Madera County.  Dale J. Blea, Judge.

Patrick J. Hennessey, Jr., under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Catherine Chatman and R. Todd Marshall, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

# INTRODUCTION

A jury convicted appellant Daniel Jafain Harris of felony inflicting corporal injury on a person with whom he had a dating relationship (Pen. Code, § 273.5, subd. (a);[1] count 3). He was also convicted of misdemeanor violating a criminal protective order (§ 273.6, subd. (a); count 7).[2] Because of two prior felony strike convictions in 1997, appellant fell under the Three Strikes law. For inflicting the corporal injury, he was sentenced to 25 years to life with the possibility of parole.[3] For violating the protective order, he was sentenced to 364 days in jail and credited for time served.

Appellant contends that the trial court abused its discretion in permitting the jury to hear a recorded jail conversation between appellant and the victim. He also argues that the court abused its discretion in not striking one of his prior strike convictions. We reject these arguments and affirm.

# BACKGROUND

The victim in this matter refused to testify at trial, and the court deemed her unavailable as a witness. Her testimony from the preliminary hearing was read to the jury.

In July 2016, appellant and the victim were in a dating relationship. They had a disagreement one day, and he punched her face and forehead. She tried to strike him back, and he punched her face again. She was bleeding from her nose and mouth, and

---

[1]    All future statutory references are to the Penal Code unless otherwise noted.

[2]    Prior to the case being submitted to the jury, the prosecutor dismissed the charges in counts 2 and 4, which involved additional allegations of infliction of corporal injury (§ 273.5, subd. (f)(2)). The jury was unable to reach verdicts on counts 1, 5 and 6, which involved allegations of inflicting corporal injury (§ 273.5, subd. (f)(1); count 1), threatening to commit a crime (§ 422; count 5), and violation of a protective order (§ 273.6, subd. (a); count 6). The court declared a mistrial for those counts.

[3]    Because appellant had a prior conviction under section 273.5, his present crime fell under section 273.5, subdivision (f)(1), which provides for a greater sentencing triad.

2.

she required medical attention. The jury saw photographs of the victim's injuries. Medical records were moved into evidence regarding the victim's emergency room visit to a local hospital following this incident.

The jury learned that, prior to this matter proceeding to trial, a restraining order had issued which prevented appellant from contacting the victim. While appellant was waiting for trial, however, the victim had visited him in jail. Their conversation was recorded. During their conversation, the victim made various accusations that he had hurt her. Appellant did not directly respond to many of the victim's accusatory statements. The court permitted a redacted copy of this recording to be introduced against appellant at trial as an adoptive admission.

The parties stipulated at trial that appellant had previously been convicted of two offenses involving domestic violence. One had occurred in June 2016 (just prior to the present charges) and the other had occurred in September 2014.[4]

## DISCUSSION

### I. The Trial Court Did Not Abuse Its Discretion In Permitting Admission Of Portions Of Appellant's Recorded Jail Conversation With The Victim.

Appellant asserts that he did not make adoptive admissions when he spoke with the victim in jail. He contends that the court prejudicially erred in its ruling, and his convictions should be reversed.

#### A. Background.

In September 2016, the victim visited appellant while he was in jail pending this trial. Their conversation was recorded and played for the jury.

Prior to trial, the prosecution provided the defense with a transcript of this recorded conversation. The prosecution also filed a motion seeking its admission at trial

---

**4** The jury also heard evidence about other alleged incidents of violence involving appellant and the victim. We need not recite those facts because appellant was not convicted of those charges.

as an adoptive admission.  The court held a hearing and it heard relatively lengthy argument from counsel.  After taking the matter under submission, the court struck the first 23 lines of the recorded statements.  The court also struck the last eight lines.  The court ruled that the remainder was admissible as an adoptive admission.  The admitted transcript is four pages in length.

During this conversation, the victim did most of the talking.  She generally focused on her relationship with appellant.  She started by noting that she was doing better recently, and she was ready to visit her son in Los Angeles.  She commented on recently finding pictures of appellant, which brought back good memories.  After describing those memories, she told appellant that she only wanted to be happy together, but it was always the same "shit" where her "face" had "to pay."  She stated, "I guess that's what you felt like I deserved."  She asked, "You angry because I told the truth on the stand?"  Appellant answered, "I ain't [*sic*] angry at anybody."  The victim said that she had protected appellant previously, but when he got out, "it was the same thing."  She noted she had stayed five days in a shelter because she had been scared to go home and face the memory.  She stated that she did not want to continue "carrying all this pain."  The victim wished that she could have been the one to change appellant.  In response, appellant asked whether she had tried to write to him.

The victim said she had written appellant a letter.  He said that jail officials had sent it back.  A short time later, the victim said she had done what was right "because you don't need to be out here hurting me .…"  She stated that she did not want someone else victimized by appellant, and she had not deserved his treatment of her.  She said, "I took care of you.  And you just hurt me in return .…"  She asked if he had anything to say before she left.  He said, "I love you.  Take care."  She asked if he had loved her when he was hurting her.  He said, "You know it."  She noted that they would likely not speak again, and she wanted appellant to explain his actions to her.  He said, "I think what we did wasn't right."  She noted that he had three times her strength and she had not put her

hands on him when they argued.  She wondered why he had used his hands with her.  Appellant reiterated that he still loved her.

**B.      Standard of review.**

We apply an abuse of discretion standard to review the trial court's evidentiary ruling.  (*People v. Waidla* (2000) 22 Cal.4th 690, 725.)  Under this standard, we will not disturb the trial court's decision unless it was exercised in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice.  (*People v. Rodrigues* (1994) 8 Cal.4th 1060, 1124–1125; see *People v. Williams* (1998) 17 Cal.4th 148, 162 [abuse of discretion review asks whether ruling in question falls outside bounds of reason under applicable law and relevant facts].)

**C.      Analysis.**

Appellant maintains that he did not make adoptive admissions.  We disagree.

An adoptive admission is a statement offered against a party who has knowledge of the other person's hearsay statement and who, by words or conduct, manifested belief in or adoption of its truth.  (*People v. Armstrong* (2019) 6 Cal.5th 735, 789–790.)  The rationale for this hearsay exception is that if someone else made a statement about the defendant that would ordinarily call for a response if it were untrue, in a setting where the defendant both heard and understood the statement, the defendant's silence, evasion, or equivocation is treated as if the defendant made the statement himself.  (*People v. Jennings* (2010) 50 Cal.4th 616, 661.)

To be admissible, the defendant must have knowledge of the other person's statement, and the defendant must have indicated his adoption of, or his belief in, the truth of the statement by words or other conduct.  (Evid. Code, § 1221; *People v. Combs* (2004) 34 Cal.4th 821, 843.)  A defendant can adopt the truth of a statement by his silence or by evasive or equivocal replies; the defendant does not need to expressly

acknowledge the correctness of the statement.  (*People v. Jennings*, *supra*, 50 Cal.4th at p. 661; *People v. Humphries* (1986) 185 Cal.App.3d 1315, 1335.)

When a defendant's silence is asserted as an adoptive admission, the critical inquiry is whether a reasonable person would have refuted the statement if he had believed it to be false.  (*People v. Riel* (2000) 22 Cal.4th 1153, 1189.)  To be admissible, however, the defendant's silence cannot be based on his constitutional right to remain silent.  (*Ibid*.)

Here, this record does not support appellant's arguments that he was invoking his constitutional right to silence when he failed to respond to many of the victim's assertions.  To the contrary, appellant voluntarily participated in the conversation with the victim, and he responded to her at times.  For instance, she asked if he had loved her when he was hurting her.  He said, "You know it."

It is clear from his overall exchanges with the victim that appellant both heard and understood her.  On many occasions, however, he remained silent when she made statements indicating that he had hurt her.  A reasonable person in his position would have denied the victim's allegations if they were false.  Nothing from this record establishes or even reasonably suggests that his silence was anything but an adoptive admission of the victim's accusatory statements.  As such, appellant's silence, evasiveness, and equivocal replies could be admitted against him.

Appellant cites *People v. Sanders* (1977) 75 Cal.App.3d 501 (*Sanders*).  This opinion does not assist him.  In *Sanders*, the defendant was convicted of second degree murder.  (*Id.* at p. 503.)  It was the prosecution's theory that the defendant had promised to pay two individuals to kill the victim.  (*Id.* at p. 504.)  At trial, the prosecution introduced into evidence a 36-page transcript of the defendant's recorded interview with police.  (*Id.* at p. 507.)  The appellate court determined it was error to permit the jury to review these statements, which largely consisted of narrative statements by an officer "which embraced a multitude of facts and were not even in question form."  (*Ibid*.)  The

6.

*Sanders* court concluded that this transcript enabled the People to restate their case, largely in the form of double hearsay, based on the officer's "extrajudicial statements concerning information he had received from others. Second, the procedure enabled the People to rehabilitate some of their badly impeached witnesses in impermissible fashion." (*Id.* at pp. 507–508.) Finally, the appellate court rejected any assertion that the officer's narrative statements were admissible as adoptive admissions. Instead, it was "fundamentally unfair to expect point-by-point denials of long narrative statements, containing several facts as well as theories and inferences—particularly where the statements are not in question form." (*Id.* at p. 508.)

Appellant argues that his circumstances were similar to those in *Sanders*. He emphasizes that a protective order was in place when the victim spoke with him in jail. He contends that the jail staff should have enforced that order and prevented this conversation from occurring. He further argues it is reasonable to infer his defense counsel had warned him about discussing his case while he was in jail. Finally, he asserts that the victim made long rambling statements, which made it unreasonable to expect specific denials. We reject these arguments.

Although appellant was in custody when he spoke with the victim, his conversation with her was not part of a custodial interrogation. Further, and unlike in *Sanders* (which involved a very lengthy transcript), appellant's jury only received four pages of transcript after the court struck additional portions of the conversation. In contrast with *Sanders*, the victim's statements did not embrace a multitude of facts but, instead were focused on her relationship with appellant. Often during their conversation, the victim referenced how appellant had hurt her. This transcript did not permit the People to restate their case. Instead, this transcript gave the jury an opportunity to see how appellant reacted when the victim confronted him with concerns about his treatment of her. If her accusations were false, it was reasonable to expect appellant to deny them. *Sanders* is distinguishable, and it does not dictate reversal of appellant's convictions.

7.

Based on this record, we reject appellant's assertion that his Fifth Amendment rights were implicated. Appellant made adoptive admissions during his recorded conversation with the victim. The trial court's evidentiary ruling was not arbitrary, capricious or patently absurd resulting in a manifest miscarriage of justice. (See *People v. Rodrigues*, *supra*, 8 Cal.4th at pp. 1124–1125.) The court's evidentiary ruling does not fall outside the bounds of reason under applicable law and relevant facts. (See *People v. Williams*, *supra*, 17 Cal.4th at p. 162.) Accordingly, an abuse of discretion is not present, and this claim fails.[5]

## II. The Trial Court Did Not Abuse Its Discretion In Denying Appellant's *Romero* Motion.

Appellant argues that the trial court abused its discretion when it denied his motion under *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497 (*Romero*) to strike a prior strike conviction from 1997. Because the court did not strike the prior felony conviction, appellant was sentenced to an indeterminate term in this matter under the Three Strike law. He contends that his sentence should be vacated and this matter remanded for resentencing.

### A. Standard of review.

We review under the deferential abuse of discretion standard a trial court's failure to dismiss or strike a prior conviction allegation. (*People v. Carmony* (2004) 33 Cal.4th 367, 375.)

### B. Analysis.

Prior to trial, the prosecutor offered to resolve this matter with a plea resulting in a prison term of 12 years eight months, which appellant rejected. Appellant argues that this plea offer demonstrates how the prosecutor valued this case. He further contends that, had the court struck one of his prior strike offenses, he still would have received "a

---

[5] Because the court did not abuse its discretion, we do not address appellant's arguments regarding prejudice.

substantial term" for the corporal injury he inflicted.**6** He asserts a determinate sentence was appropriate in this matter.

Appellant acknowledges that his criminal record is "substantial," at least to the extent he has two violent rapes on his record from 1997. He argues, however, that those rapes arose from a single incident, and they were approximately 20 years old before the present crimes occurred. He contends it would not have been unreasonable for the court to strike one of those prior strike convictions because they were not separate acts. The two rapes involved the same 14-year-old victim on the same day. We disagree that the court abused its discretion.

### 1. Background on the Three Strikes law.

"The 'Three Strikes' law prescribes increased punishment for a person who is convicted of a felony after having been previously convicted of specified offenses." (*People v. Murphy* (2001) 25 Cal.4th 136, 139.) Section 1385, subdivision (a), gives the trial court the discretion to strike an allegation that a defendant has previously been convicted of a felony if the dismissal is in furtherance of justice. (*Romero*, *supra*, 13 Cal.4th at p. 508.) "[T]he order striking such allegations … embodies the court's determination that, ' "in the interest of justice" [the] defendant should not be required to undergo a statutorily increased penalty which would follow from judicial determination of [the alleged] fact.' " (*Ibid.*)

"[T]he Three Strikes law was devised for the 'revolving door' career criminal, and was expressly intended 'to ensure longer prison sentences … for those who commit a felony' as long as they were previously convicted of at least one strike. [Fns. omitted.]"

---

**6** Appellant was convicted of violating section 273.5, subdivision (a). Because appellant had a prior conviction under section 273.5, his present crime fell under section 273.5, subdivision (f)(1), which provides for a greater sentencing triad of two, four, or five years. With one prior strike felony, the imposed sentence would have been doubled. (§ 1170.12, subd. (c)(1).) With two or more prior strikes, the sentence is elevated to an indeterminate term of life imprisonment. (§ 1170.12, subd. (c)(2).)

9.

(*People v. Strong* (2001) 87 Cal.App.4th 328, 331–332 & fn. 5.)  Our Supreme Court has declared that the purpose of the Three Strikes law is to punish recidivism, and it focuses on the status of a defendant as a repeat felon.  (*People v. Murphy*, *supra*, 25 Cal.4th at p. 155.)

In deciding whether to strike a prior conviction, "the court in question must consider whether, in light of the nature and circumstances of [the defendant's] present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*People v. Williams*, *supra*, 17 Cal.4th at p. 161.)

Two fundamental precepts guide our appellate review.  First, the appealing party bears the burden " ' "to clearly show that the sentencing decision was irrational or arbitrary.  [Citation.]  In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review." ' [Citation.]" (*People v. Carmony*, *supra*, 33 Cal.4th at pp. 376–377.)  "Second, a ' "decision will not be reversed merely because reasonable people might disagree.  'An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge.' " ' [Citation.]  Taken together, these precepts establish that a trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it." (*Id.* at p. 377.)

### 2.  The facts of appellant's case.

The trial court focused on appellant's criminal history and it determined that appellant came within the spirit of the Three Strikes law.  This record supports the trial court's conclusion.

Appellant was born in 1977, and he was approximately 40 years old at the time of this sentencing. His criminal history started in 1997, when he was convicted of two counts of forcible rape (§ 261, subd. (a)(2)) and second degree burglary (§ 460, subd. (b)). The rape victim was 14 years old. He was sentenced to 12 years in state prison.

In 2010, appellant was found in violation of parole, and he was returned to prison. In 2011, appellant was sentenced to 16 months in prison for felony failure to register as a sex offender (§ 290.011, subd. (b)).

In 2013, appellant was convicted of misdemeanor spousal battery (§ 243, subd. (e)(1)) and assault (§ 240). He was on felony probation at the time, and he was sentenced to one year in jail.

In 2016, appellant was convicted of misdemeanor willful infliction of corporal injury (§ 273.5, subd. (a)). He was sentenced to jail for an unknown period of time and placed on three years' formal probation. Appellant then committed the present offenses in 2016.

Although appellant's prior felony strikes were relatively old, they involved an egregious rape of a 14-year-old victim. He has a clear history of violence towards women, and his present felony involved more violence towards a woman. He has a clear history of continuous criminal conduct, including repeated incarcerations. He has poor performance on probation and parole.

We presume the trial court acted to achieve legitimate sentencing objectives. Appellant's actions in this matter, and over his adult lifetime, establish that he is a danger to society, and he has neither been rehabilitated nor deterred from further criminal activity as a result of his past imprisonments. He is a career criminal and a repeat felon. Appellant clearly fell within the spirit of the Three Strikes law, and he is being punished for his recidivism.

Based on this record, appellant has failed to show that the trial court's decision was irrational or arbitrary. The trial court acted well within its discretion to deny

11.

appellant's *Romero* motion.  Accordingly, the court did not abuse its discretion and this claim fails.

## **DISPOSITION**

The judgment is affirmed.

LEVY, Acting P.J.

WE CONCUR:


POOCHIGIAN, J.


MEEHAN, J.

12.