Filed 6/29/23  In re S.L. CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FOURTH APPELLATE DISTRICT

# DIVISION TWO

|  |  |
|---|---|
| In re S.L. et al., Persons Coming Under the Juvenile Court Law. | |
| RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES, | E080199 |
| Plaintiff and Respondent, | (Super.Ct.No. DPIN2200065) |
| v. | OPINION |
| M.L., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Susanne S. Cho, Judge.

Affirmed.

Richard L. Knight, under appointment by the Court of Appeal, for Defendant and Appellant.

Minh C. Tran, County Counsel, Teresa K.B. Beecham and Catherine E. Rupp, Deputy County Counsel, for Plaintiff and Respondent.

1

## INTRODUCTION

M.L. (mother) appeals from the juvenile court's jurisdictional and dispositional orders as to her children, S.L., J.L., and A.L. (the children). Mother's sole contention on appeal is that the juvenile court and the Riverside County Department of Public Social Services (DPSS) failed to comply with the duty of inquiry under the Indian Child Welfare Act of 1978 (25 U.S.C. § 1901 et seq.) (ICWA) and related California statutes, specifically Welfare and Institutions Code[1] section 224.2, subdivision (b). DPSS argues it had no duty to ask extended family members about the children's potential Indian status since the children were taken into protective custody pursuant to a warrant. (§§ 224.2, subd. (b), 340.) We agree with DPSS and affirm the court's orders.

## PROCEDURAL BACKGROUND

On September 16, 2022, DPSS received an immediate response referral alleging physical abuse and general neglect of A.L. and risk of abuse of mother's four other children—J.L., S.L, A.V., and A.E. It was reported that A.L. had a bruise on the right side of her eye. A social worker interviewed mother, who denied knowing how A.L. got the bruise. The social worker spoke with A.L., who initially said mother hit her, but then retracted her statement and said she got hurt at school by a boy. J.L. disclosed that mother hit him with a wooden stick, "other hard stuff," and a belt. S.L. disclosed that mother hit him and his siblings.

---

[1] All further statutory references will be to the Welfare and Institutions Code unless otherwise indicated.

On September 22, 2022, DPSS obtained protective custody warrants (§ 340) for all five children from the Riverside County Juvenile Court, and social workers placed them in protective custody.

On September 27, 2022, DPSS filed a section 300 petition on behalf of all the children, alleging S.L., J.L., and A.L. came within the provisions of subdivision (a) (serious physical harm) and (b) (failure to protect), and that A.V. and A.E. came within the provisions of subdivision (b) and (j) (abuse of sibling).[2] The petition listed S.L. (Father L.) as the father of S.L., J.L., and A.L.; F.V. (Father V.), as the father of A.V.; and A.E. (Father E.) as the father of A.E.

On September 16, 2022, mother stated she had no Native American ancestry. On September 22, 2022, Father E. and Father V. also reported they had no Native American ancestry, and on September 26, 2022, Father L. reported the same.

The court held a detention hearing on September 28, 2022. Father L. and Father E. each filed a Judicial Council Form, form ICWA-020 (ICWA-020), stating neither had Indian heritage. Father V. filed an ICWA-020 form stating he was or might be a member of the Yaqui tribe of Arizona. Mother filed an ICWA-020 form and checked the box indicating that one or more of her relatives "is or was a member of a federally recognized tribe"; however, she did not identify the tribe. The court ordered DPSS to interview mother for more information. It also ordered all parents to provide any information about any kind of Indian background they may have.

---

[2] DPSS subsequently filed an amended section 300 petition to add and modify some of the factual allegations under subdivision (b).

3

The court held a contested detention hearing on October 4, 2022. The court declared Father E. the presumed father of A.E., Father V. the presumed father of A.V., and Father L. the presumed father of the rest of the children. It also found that ICWA did not apply and that DPSS had conducted a sufficient inquiry. The court found that a prima facie case had been made, and the children came within section 300; however, it ordered that A.E. and A.V. remain in the care of their respective fathers and detained the other children. It then set a jurisdiction hearing.

The social worker filed a jurisdiction/disposition report on November 9, 2022, and indicated that the court had determined ICWA did not apply at the hearing on October 4, 2022. On October 26, 2022, mother confirmed she had no Native American ancestry. On October 28, 2022, Father E. confirmed he had no Native American ancestry. On October 30, 2022, Father L. confirmed he had no Native American ancestry, and his mother and grandmother also denied having Native American ancestry. On October 31, 2022, Father V. stated his grandmother told him her family had Pascua Yaqui ancestry, but neither he nor his mother was registered with the tribe. Mother also reported that she was raised by her mother and maternal great grandmother, and her father "was not involved while she was growing up." Mother said she had some contact with her paternal half siblings, who lived in Apple Valley, California.

The court held a jurisdiction hearing on November 15, 2022, and again found that ICWA did not apply. It sustained the petition and adjudged the children dependents of the court. The court ordered that A.V. and A.E. remain in their respective father's custody and be made available to DPSS for welfare checks. The court removed the other

4

three children from mother and Father L. and ordered reunification services to be provided. The court set a six-month review hearing for mother and Father L., and a family maintenance hearing for the other fathers for May 1, 2023.

DISCUSSION

Under the Plain Language of Section 224.2, DPSS Was Not Required to Ask Extended

Family Members About the Children's Potential Indian Ancestry

Mother argues that the court failed to require DPSS to inquire of all of her and Father L.'s "readily obtainable" extended family members about the potential Indian ancestry of their children. Relying on section 224.2, subdivision (b), she asserts that DPSS failed to inquire of the following maternal extended family members: the maternal great-grandmother, mother's paternal half siblings, and "the rest of her family." As to the paternal extended family members, she states DPSS failed to inquire of Father L.'s maternal grandparents, a paternal aunt, a paternal uncle, and a paternal aunt or uncle (Angel). DPSS responds that since the children were removed pursuant to custody warrants under section 340, it had no duty to inquire of extended family members. We agree with DPSS.

"ICWA establishes minimum federal standards that a state court must follow before removing Indian children from their families. [Citation.] California law implementing ICWA also imposes requirements to protect the rights of Indian children, their families, and their tribes." (*In re Ricky R*. (2022) 82 Cal.App.5th 671, 678 (*Ricky R*.).) DPSS and the juvenile court have an "affirmative and continuing duty to inquire" whether a child in a dependency proceeding "is or may be an Indian child." (§ 224.2,

5

subd. (a).) "The duty to inquire consists of two phases—the duty of initial inquiry and the duty of further inquiry." (*Ricky R*., at p. 678.) We note that this case does not concern the duty of further inquiry, which arises only if the court or the department has "reason to believe that an Indian child is involved." (§ 224.2, subd. (e).)

The duty of initial inquiry begins with the initial contact when DPSS must ask "the party reporting child abuse or neglect whether the party has any information that the child may be an Indian child." (§ 224.2, subd. (a).) Under section 224.2, subdivision (b), once a child has been taken into temporary custody, DPSS must ask the child, parents, legal guardian, extended family members, and others who have an interest in the child whether the child is or may be an Indian child "[i]f [the] child [has been] placed into the temporary custody of a county welfare department pursuant to Section 306 . . . ." (§ 224.2, subd. (b).)[3]

"Section 306 permits a social worker to take a child into temporary custody 'without a warrant' in emergency situations—namely, when 'the social worker has reasonable cause to believe that the child has an immediate need for medical care or is in immediate danger of physical or sexual abuse or the physical environment poses an immediate threat to the child's health or safety.' " (*In re Robert F*. (2023) 90 Cal.App.5th 492, 500-501 (*Robert F*.); see § 306, subd. (a)(2).) In contrast, section 340

---

[3] In all instances, "[a]t the first appearance in court of each party, the court shall ask each participant present in the hearing whether the participant knows or has reason to know that the child is an Indian child. The court shall [also] instruct the parties to inform the court if they subsequently receive information that provides reason to know the child is an Indian child." (§ 224.2, subd. (c).)

authorizes the juvenile court to issue protective custody warrants when a section 300 petition has been filed and "the circumstances of [the minor's] home environment may endanger the health, person, or welfare of the minor, or whenever a dependent minor has run away from his or her court-ordered placement." (§ 340, subd. (a).)  A court may also issue a protective custody warrant without a section 300 petition. (§ 340, subd. (b).) "[S]ection 340 requires neither imminent danger nor the threat of physical harm for the court to issue a warrant." (*Robert F.*, at p. 501.)

The language of section 224.2, subdivision (b), is clear.  It plainly states: "If a child is placed into the temporary custody of a county welfare department *pursuant to Section 306* . . . the county welfare department . . . has a duty to inquire whether that child is an Indian child." (§ 224, subd. (b), italics added.)  As we recently explained in detail in *Robert F.*, the legislative history supports the view that the Legislature intended to apply section 224.2, subdivision (b), narrowly.  (See *Robert F.*, *supra*, 90 Cal.App.5th at p. 501.)  "The Legislature intended to impose a duty to question extended family members if the child was placed into the county welfare department's temporary custody under section 306." (*Id*. at p. 500.)

7

In this case, the children were not placed into DPSS's temporary custody "pursuant to Section 306." (§ 224.2, subd. (b).) Rather, DPSS obtained protective custody warrants from the juvenile court under section 340. Section 306 played no role in this removal. Thus, as DPSS asserts, the expanded duty of initial inquiry under section 224.2, subdivision (b), does not apply. (*Robert F.*, *supra*, 90 Cal.App.5th at p. 504; see *In re Adrian L.* (2022) 86 Cal.App.5th 342, 355-357 (conc. opn. of Kelley, J.).) As a result, mother's argument that DPSS violated its duty of initial inquiry under section 224.2, subdivision (b), lacks merit.

In her reply brief, mother argues that section 224.2, subdivisions (a) and (b), and section 306 do apply to this case. First, she cites section 224.2, subdivision (a), which provides that "the duty to inquire begins with the initial contact, including, but not limited to, asking the party reporting child abuse or neglect whether the party has any information that the child may be an Indian child." (§ 224.2, subd. (a).) She claims that the "but not limited to" language "includes that extended family members be inquired of." However, the language of section 224.2, subdivision (a), does not say anything about inquiring of extended family members; rather, it specifically states "the duty to inquire begins with the *initial contact,*" or the reporting party. (§ 224.2, subd. (a), italics added.)

Mother next cites section 306, subdivision (a)(1) and (a)(2), and states that "[v]arious forms of temporary custody are taken until permanent custody is taken during the dispositional hearing." She points out that, at the detention hearing, the court recalled the section 340 protective custody warrants and then detained the children with DPSS,

8

"but no longer under a warrant." She then concludes that "DPSS had temporary custody of the children without warrants . . . pursuant to section 224.2, subdivision (b)," and therefore had a duty to inquire of the extended relatives. Mother's argument has no merit. Again, the children were not placed into DPSS's temporary custody "pursuant to Section 306." (§ 224.2, subd. (b).) Mother attempts to make the circumstances here fit into section 306, subdivision (a)(2); however, the language of that statute says a social worker may "*[t]ake into* and maintain temporary custody of, *without a warrant*, a child who has been declared a dependent child of the juvenile court under Section 300 or who the social worker has reasonable cause to believe is a person described in subdivision (b) or (g) of Section 300, . . ." (Italics added.) Here, DPSS obtained protective custody warrants from the juvenile court under section 340 and took temporary custody of the children under those warrants. Thus, section 306, subdivision (a)(2), does not apply. Further, we note that section 306, subdivision (a)(1), applies when the social worker takes custody of a child "who has been delivered by a peace officer," which was not the case here.

In the alternative, mother argues that section 306, subdivision (b), applies to this case. Section 306, subdivision (b), provides that "[u]pon receiving temporary custody of a child, the county welfare department shall inquire pursuant to Section 224.2, whether the child is an Indian child." Mother asserts that DPSS received temporary custody of the children and had a duty to inquire pursuant to section 224.2, since "section 306, subdivision (b) does not indicate whether temporary custody is to be taken with or without a warrant." However, we must construe the words of the provision within the

9

context of the statute. (*People v. Murphy* (2001) 25 Cal.4th 136, 142 ["We do not, however, consider the statutory language 'in isolation.' "]) In other words, "[w]e must harmonize 'the various parts of a statutory enactment . . . by considering the particular clause or section in the context of the statutory framework as a whole.' " (*Ibid.*) Mother contends that since subdivision (b) of section 306 "does not indicate whether temporary custody is to be taken with or without a warrant … a werrent [*sic*] isn't relevant." Thus, DPSS should have inquired of the extended relatives pursuant to section 224.2. However, when section 306, subdivision (b), is read in the context of the statute, temporary custody must be taken by a social worker after receiving a child under one of the circumstances listed in section 306, subdivision (a), before the duty to inquire pursuant to section 224.2 applies. As explained *ante*, neither of the circumstances in subdivision (a) occurred here.

"We emphasize that nothing in this opinion is intended to limit DPSS's or the court's duty of inquiry prescribed by subdivisions (a) and (c) of section 224.2. As already explained, those subdivisions describe the duty of inquiry that arises in every dependency case." (*Robert F.*, *supra*, 90 Cal.App.5th at pp. 503-504.) However, "the plain language of those subdivisions does not require [DPSS] or the court to question extended family members as part of the initial inquiry in every case." (*Id*. at p. 504.) Although case-specific circumstances may require DPSS to interview extended family members under one of those subdivisions, such as when a family member contacts the social worker and volunteers that the family has Indian ancestry, mother has not identified any such circumstances here. (*Ibid.*)

10

In sum, we conclude that section 224.2, subdivision (b), "requires a county welfare department to ask extended family members about a child's Indian status only if the department has taken the child into temporary custody under section 306." (*Robert F.*, *supra*, 90 Cal.App.5th at p. 504.) Because section 306 played no role in the children's removal here, section 224.2, subdivision (b), does not apply. Even if we were to find ICWA inquiry error, such error would not be a basis for reversing the jurisdictional or dispositional orders since the case is ongoing. (*In re Dominick D.* (2022) 82 Cal.App.5th 560, 567 ["ICWA inquiry and notice errors do not warrant reversal of the juvenile court's jurisdictional or dispositional findings and orders other than the ICWA finding itself."].)

## DISPOSITION

The court's orders are affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

FIELDS

J.

We concur:

McKINSTER

Acting P. J.

MILLER

J.

11