Filed 1/2/24  P. v. Orozco CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ANTANCIO OROZCO,<br><br>    Defendant and Appellant. | H050446<br>(Monterey County<br>Super. Ct. No. SS032353A) |

In 2004, defendant Antancio Orozco pled guilty to one count of second degree robbery (Pen. Code, § 211.)[1]  He also admitted various prior convictions, including a prior strike conviction (§ 1170.12, subd. (c)(1)), three serious prior felony convictions (§ 667, subd. (a)), and one prior conviction that resulted in a prison term (§ 667.5, subd. (b).)  The court sentenced Orozco to a stipulated total term of 22 years in state prison.

In 2022, following the passage of Senate Bill No. 483 (2021-2022 Reg. Sess.) (Senate Bill 483), Orozco requested that he be resentenced because his section 667.5, subdivision (b) enhancement was now legally invalid.  He also requested that two of the section 667 enhancements be stricken pursuant to recent amendments to section 1385. The trial court struck the section 667.5, subdivision (b) enhancement and reduced Orozco's sentence by one year, but denied the request to strike the section 667 enhancements.

---

[1] Undesignated statutory references are to the Penal Code.

On appeal, Orozco claims that the trial court abused its discretion in denying his request to strike the section 667 enhancements.

For the reasons stated below, we find no abuse of discretion and affirm the trial court's order.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Background[2]

On July 6, 2003, between 2:00 a.m. and 2:30 a.m., John Doe[3], a manager at a hotel in the Castroville area, heard noises and banging outside of his room. As he walked outside, Doe saw Orozco, who occasionally helped him with security at the hotel, and another man (later identified as R.G.)[4] "struggling around." Orozco had R.G. pushed up against a railing, and Doe observed that R.G.'s face and nose were bleeding. When Doe asked Orozco what was going on, Orozco claimed that they were fighting because R.G. tried to pull a knife on him. Doe also observed that Orozco had his right hand in R.G.'s pocket. When Orozco pulled his hand out of R.G.'s pocket, Doe saw that Orozco was holding what appeared to be a billfold or wallet. Orozco then went downstairs. Doe identified R.G. as a tenant of the hotel and a migrant worker, who would usually have been paid on a Saturday (the day of the incident).

After officers arrived on the scene, they interviewed R.G., who indicated he was walking from his room to the bathroom when Orozco confronted him. R.G. stated that Orozco punched him in the face, pinned him against the railing, and took his wallet, which contained over $3,000.

---

[2] The following facts are derived from witness testimony at Orozco's preliminary hearing.

[3] This witness's name was redacted from the court record.

[4] We refer to the victim in the proceedings by his or her initials only to protect personal privacy interests pursuant to California Rules of Court, rule 8.90(b)(10) & (11).

### B.    *Procedural Background*

#### 1. *Charges, Plea, and Original Sentence*

On July 16, 2004, the Monterey County District Attorney's Office filed a first amended information charging Orozco with second degree robbery (§ 211; count 1). The information also alleged that Orozco had previously been convicted of forcible rape (§ 261, subd. (a)(2)), which constituted a prior serious or violent felony pursuant to sections 1170.12, subdivision (c)(1) and 667, subdivision (a)(1). The information further alleged Orozco had been previous convicted of assault with a deadly weapon (§ 245, subd. (a)(1)) and residential burglary (§ 459), which constituted serious felonies pursuant to section 667, subdivision (a)(1). It was also alleged that Orozco was previously convicted of attempted burglary (§§ 664, 459), for which he served a prison term pursuant to section 667.5, subdivision (b).

On the same date, Orozco pled guilty to second degree robbery (count 1) and admitted all of the allegations regarding his prior convictions.

On December 10, 2004, the trial court sentenced Orozco to the middle term of three years for second degree burglary (count 1), which was doubled to six years based on his prior conviction for forcible rape. (§ 1170.12, subd. (c)(1).) The court also imposed three consecutive five-year terms for Orozco's prior convictions for forcible rape, assault with a deadly weapon, and residential burglary. (§ 667, subd. (a)(1).) Finally, the court imposed a consecutive one-year term for Orozco's prior conviction of attempted burglary, which had resulted in a prison term. (§ 667.5, subd. (b).) Orozco's total sentence amounted to 22 years in state prison.

### 2.  Resentencing Request

On July 21, 2022, Orozco sent a letter to the trial court asking to be resentenced following the passage of Senate Bill 483.[5]  The trial court subsequently appointed counsel for Orozco and set the matter for further hearing.

On August 29, 2022, Orozco's counsel filed a formal request for resentencing pursuant to section 1172.75.  In her request, counsel asked that the trial court dismiss the section 667.5, subdivision (b) enhancement, which was now legally invalid, and resentence Orozco according to current sentencing law.  In addition to the one-year prison enhancement, counsel also asked that the trial court strike two of the section 667, subdivision (a) enhancements pursuant to the current language in section 1385.  Counsel argued that under section 1385, subdivision (c)(2)(B), all enhancements beyond a single enhancement must be dismissed if one case involved multiple enhancements.  Counsel similarly noted that under section 1385, subdivision (c)(2)(C), enhancements shall be dismissed if their application resulted in a sentence of twenty years or more.  As both these conditions applied to Orozco's matter, counsel asserted that dismissal of the enhancements was mandatory.

In opposition, the People argued that the express language of section 1385, as well as the legislative history behind its recent amendments, demonstrated that dismissal of

---

[5] Effective January 1, 2020, the Legislature passed Senate Bill No. 136 (2019-2020 Reg. Sess.), which amended section 667.5, subdivision (b) to limit prior prison term enhancements to sexually violent offenses only.  (Stats. 2019, ch. 590, § 1.)  The Legislature subsequently passed Senate Bill 483, which made this change retroactive by adding section 1171.1 (Stats. 2021, ch. 728, § 3), which was later renumbered as section 1172.75.  (Stats. 2022, ch. 58, § 12.)  Under section 1172.75, "[a]ny sentence enhancement that was imposed prior to January 1, 2020, pursuant to subdivision (b) of Section 667.5," except for enhancements for certain sexually violent offenses, "is legally invalid."  (§ 1172.75, subd. (a).)  Once the trial court has confirmed that a defendant's current judgment includes a prior prison term enhancement that is now legally invalid, the trial court "shall recall the sentence and resentence the defendant."  (§ 1172.75, subd. (c).)

4

any enhancements was discretionary, not mandatory. The People claimed that this discretion was evident from the following language: (1) section 1385, subdivision (c)(1), which states that the court shall dismiss if it is in the "furtherance of justice" to do so; and (2) section 1385, subdivision (c)(2), which begins with the phrase "in exercising its discretion under this subdivision." The People also noted that under section 1385, subdivision (c)(2), the trial court should not dismiss an enhancement if doing so would endanger public safety. Based on Orozco's criminal history, as well as his record of continued offenses while in prison, the People contended that he posed a great danger to the public such that it would not be in the interests of justice to dismiss the enhancements.

### 3. Resentencing Proceedings and Order

On October 6, 2022, the trial court held a hearing on Orozco's resentencing petition. As there was no dispute that the section 667.5, subdivision (b) enhancement was now legally invalid following the enactment of section 1172.75, the trial court dismissed this enhancement.

With respect to the two section 667, subdivision (b), enhancements, the trial court agreed with defense counsel that there were two applicable mitigating circumstances under section 1385 – namely, subdivisions (c)[(2)](b) and (c)[(2)](c)[6], that weighed greatly in favor of dismissing the enhancements. The trial court further indicated that based on its understanding of section 1385, subdivision (c)(2), it could only choose not to dismiss an enhancement if it found a likelihood that such a dismissal would result in physical injury or other serious danger to others. The trial court described Orozco's

---

[6] The trial court referred to the mitigating factors as falling under section 1385, subdivision (c)(3), which was the original version of subdivision (c) as enacted pursuant to Senate Bill No. 81 (2021-2022 Reg. Sess.) (Senate Bill 81). Section 1385 was amended effective June 30, 2022, and these factors are now listed under subdivision (c)(2). (Stats. 2022 ch. 58 § 15.) For consistency, we refer to the factors under the current version of the statute.

5

criminal history in detail, including: (1) his prior strike offense for forcible rape; (2) his prior strike offense for assault with a deadly weapon, which resulted in a prison sentence; (3) his prior strike offense for burglary, which he committed while on parole and resulted in another prison sentence; (4) his subsequent arrest for possession of guns while on parole; (5) his prior offense for attempted burglary, which resulted in another prison sentence; and (6) his offense in the underlying case for second degree robbery, which resulted after several parole violations, and would have resulted in a three-strikes life sentence if not for his guilty plea and stipulated sentence. The court also noted that while incarcerated, Orozco violated prison rules including possession of a cell phone, fighting, and conviction for possession of a deadly weapon.

The court ultimately found that Orozco's criminal history of four strike offenses, his "revolving door" of parole violations, and his inability to abide by rules while incarcerated, were all "concerning from an aggressive standpoint." The court also found that Orozco's conviction for possession of a deadly weapon, while in prison, presented a public safety issue because of the "aggressive and assaultive" nature of the offense. The court therefore concluded that there was sufficient evidence demonstrating that dismissal of the section 667 enhancements would result in physical injury or danger or others, and therefore declined to dismiss. The court subsequently reduced Orozco's sentence by one year to account for the dismissal of the section 667.5 enhancement and resentenced Orozco to a total of 21 years in state prison.

Orozco timely appealed.

## II.    DISCUSSION

Orozco argues that the trial court erred in denying his request to strike the two section 667 enhancements. Orozco claims that the express language of section 1385 mandates that enhancements shall be dismissed when certain mitigating circumstances

are present. Orozco therefore contends that the trial court was required to dismiss at least one of the enhancements and erred in declining to do so.

### A. *Legal Principles and Standard of Review*

In general, we review a trial court's decision not to strike a sentence enhancement under section 1385 for abuse of discretion. (*People v. Carmony* (2004) 33.Cal.4th 367, 371 (*Carmony*); *People v. Mendoza* (2023) 88 Cal.App.5th 287, 298 (*Mendoza*).) The abuse of discretion standard is highly deferential. (*Mendoza, supra,* 88 Cal.App.5th at p. 298.) When, " ' "as here, a discretionary power is statutorily vested in the trial court, its exercise of that discretion 'must not be disturbed on appeal *except* on a showing that the court exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice.' " ' " (*Ibid.*)

In order to determine whether the trial court abused its discretion in the instant matter, we must first interpret the legislative intent and meaning of the terms "shall be dismissed" as used in section 1385, subdivision (c). We review questions of statutory interpretation de novo. (See *Mendoza, supra,* 88 Cal.App.5th at p. 294.) In interpreting a statute, our primary goal " 'is to determine the Legislature's intent so as to effectuate the law's purpose.' " (*People v. Ruiz* (2018) 4 Cal.5th 1100, 1105.) " 'Because the statutory language is generally the most reliable indicator of that intent, we look first at the words themselves, giving them their usual and ordinary meaning.' " (*Ibid.*) We do not "consider the statutory language 'in isolation.' " (*People v. Murphy* (2001) 25 Cal.4th 136, 142.) "Rather, we look to 'the entire substance of the statute … in order to determine the scope and purpose of the provision … .' " (*Ibid.*) "That is, we construe the words in question ' "in context, keeping in mind the nature and obvious purpose of the statute …" ' " (*Ibid.*)

Senate Bill 81, effective January 1, 2022, added subdivision (c) to section 1385. Section 1385, subdivision (c) provides, "(1) Notwithstanding any other law, the court shall dismiss an enhancement if it is in the furtherance of justice to do so, except if

7

dismissal of that enhancement is prohibited by any initiative statute.  [¶]  (2) In exercising its discretion under [subdivision (c)], the court shall consider and afford great weight to evidence offered by the defendant to prove that any of the mitigating circumstances in [the subparagraphs to subdivision (c)(2)] are present.  Proof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety. 'Endanger public safety' means there is a likelihood that the dismissal of the enhancement would result in physical injury or other serious danger to others."  (§ 1385, subd. (c)(1) & (2).)  The mitigating circumstances identified in the subparagraphs include, among others: "(B) Multiple enhancements are alleged in a single case.  In this instance, all enhancements beyond a single enhancement shall be dismissed.  [¶]  "(C) The application of an enhancement could result in a sentence of over 20 years.  In this instance, the enhancement shall be dismissed[.]"  (§ 1385, subd. (c)(2)(B) & (C).)

There currently exists a split of authority regarding the application of section 1385, subdivision (c).  (See *People v. Walker* (2022) 86 Cal.App.5th 386, 302, review granted Mar. 22, 2023, S278309 (*Walker*) [holding that the term "great weight" and existence of mitigating circumstances creates a rebuttable presumption in favor of dismissal unless the court finds dismissal would endanger public safety]; but see also *People v. Ortiz* (2023) 87 Cal.App.5th 1087, review granted Apr. 12, 2023, S278894 (*Ortiz*) [holding that the existence of a statutory mitigating circumstances does not compel the court to dismiss the enhancement even if it does not explicitly find that a dismissal would endanger public safety].)  How courts should construe and apply the newly added provision is a question currently pending before the California Supreme Court.

8

### B. *Analysis*

#### 1. *Section 1385 Does Not Mandate Dismissal Even if Mitigating Circumstances Are Present*

Orozco argues that usage of the word "shall" in section 1385, subdivision (c)(2)(C) demonstrated the Legislature's intent to mandate dismissal of enhancements when application of them would result in a sentence of over 20 years. Orozco claims that appellate courts have uniformly settled that "shall" is a word of command and therefore implies a mandatory or required duty. Because section 1385 includes both the words "shall" and "may," Orozco asserts the Legislature was aware of the different meanings of both words and intended to distinguish between mandatory and discretionary requirements.

California courts, including this one, have ruled that the "shall be dismissed" language should not be viewed in isolation, but in conjunction with the statute as a whole, and ultimately have concluded that such language does not mandate dismissal of the enhancement. (See *Ortiz, supra,* 87 Cal.App.5th at p. 1093 [holding that the specification of mandatory factors does not displace the court's obligation to exercise its discretion in determining whether dismissal is in the furtherance of justice]; *Mendoza, supra,* 88 Cal.App.5th at p. 296 [concluding that the "shall be dismissed" language, as well as the language of all of the listed mitigating circumstances, only applies if the court does not find that dismissal of the enhancement would endanger public safety]; *Walker, supra,* 86 Cal.App.5th at p. 396 [holding that the usage of the word "shall" does not wholly deprive the trial court of its discretion to dismiss an enhancement].) In viewing the entire language of the statute, we find these decisions persuasive and agree that the word "shall" does not mandate dismissal. Despite the inclusion of the word "shall," section 1385 contains additional language that demonstrates that the trial court retains discretion when evaluating a request such that dismissal is not mandatory. Specifically, subdivision (c)(2) states that the presence of one or more of the enumerated mitigating circumstances

9

weighs greatly in favor of dismissal "unless the court finds that dismissal of the enhancement would endanger public safety." (§ 1385, subd. (c)(2).) Such language reflects the trial court's discretion in declining to dismiss an enhancement if doing so would endanger public safety. (See *Mendoza, supra,* 88 Cal.App.5th at p. 296.) Therefore, we find that section 1385 does not obligate the trial court to dismiss an enhancement simply because the mitigating circumstances containing the language "shall be dismissed," as found in section 1385, subdivisions (c)(3)(B) and (C), are present.

### 2. *The Trial Court Did Not Abuse Its Discretion in Refusing to Dismiss the Enhancements*

Based on our finding that the word "shall" does not mandate dismissal of the enhancements even if the mitigating circumstances containing this word are present, we now turn to the question of whether the trial court abused its discretion in refusing to dismiss the enhancements.

Despite the previously discussed split in authority, the cases cited above have all held that it is within the court's discretion not to dismiss an enhancement if it makes a finding that dismissal would endanger public safety. (See *Ortiz, supra,* 87 Cal.App.5th at p. 1094; *Mendoza, supra,* 88 Cal.App.5th at p. 297; *Walker, supra,* 86 Cal.App.5th at p. 399-400.) In the instant matter, the court spoke at length at the resentencing hearing about why it believed dismissal would result in physical injury or danger to others. In discussing public safety, the court pointed to Orozco's substantial criminal history, which included a number of violent and serious crimes under section 667, subdivision (a), while also noting that Orozco committed many of these offenses while on parole. In addition, the court noted that Orozco failed to demonstrate an ability to refrain from aggressive or violent conduct while in prison, as evidenced by his repeated rule violations and subsequent conviction for possession of a deadly weapon. Based on these relevant considerations, it was not an abuse of discretion for the trial court to conclude that dismissing the enhancements and decreasing Orozco's sentence would endanger public

10

safety by creating a risk of physical injury or danger to others.  (See *Carmony, supra*, 33 Cal.4th at p. 377.)

### III.    DISPOSITION

The trial court's resentencing order is affirmed.

_____
                                            Wilson, J.

WE CONCUR:

_____
        Bamattre-Manoukian, Acting P.J.

_____
                Adams, J.[*]

People v. Orozco
H050446

_____

[*] Judge of the Santa Clara County Superior Court, assigned by the Chief Justice pursuant to Article VI, section 6 of the California Constitution.