Filed 8/28/25  P. v. Keblis CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G063356 |
| v. | (Super. Ct. No. 18WF2460) |
| JOHN ANTHONY KEBLIS, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, Andre Manssourian, Judge. Affirmed.

Arielle Bases, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Daniel Rogers, Alana Cohen Butler and Amanda Lloyd, Deputy Attorneys General, for Plaintiff and Respondent.

\*       \*       \*

## INTRODUCTION

A jury convicted John Anthony Keblis of one count of assault with a firearm (Pen. Code, § 245, subd. (a)(2); count 3)[1] and found to be true allegations that he personally used a firearm (§ 12022.5, subd. (a)) and that he personally inflicted great bodily injury under circumstances involving domestic violence (§ 12022.7, subd. (e)). The jury acquitted Keblis of attempted murder and its lesser included offenses (§§ 187, subd. (a), 192, subd. (a), 664; count 1) and of first degree residential burglary (§§ 459, 460, subd. (a); count 2). The trial court found all prior strike and prior felony convictions allegations to be true and sentenced Keblis to a term of 30 years to life in prison.

Keblis argues the trial court erred by denying his request to give a pinpoint jury instruction on his defense of accident (CALCRIM No. 3404) and by declining to strike one or both of his prior strikes for purposes of sentencing under the "Three Strikes" law, sections 667, subdivisions (b) through (i) and 1170.12. We conclude there was no instructional error because accident, which is not a true affirmative defense, was adequately covered by the instructions given. The trial court considered the proper factors and did not abuse its discretion in declining to strike either of Keblis's prior convictions. We therefore affirm the judgment.

## FACTS

### I.

### Keblis's Relationship With Jane Doe

Keblis and Jane Doe dated for about six months in 2018. At that time, Jane Doe was living in and running a sober living home. Jane Doe

---

[1] Further statutory references are to the Penal Code.

shared a room at the sober living home with D.H., a close family friend whom she considered to be like a brother. When Keblis stayed overnight with Jane Doe they shared her bed. The door to the room could be locked, and Jane Doe never gave Keblis the door keys.

In her room, Jane Doe had a television set that she had purchased and a mattress purchased by Keblis. Jane Doe was a musician and kept her drum set, amplifiers, and other musical equipment in the room. Jane Doe used the musical equipment for jam sessions she held in the room and kept the equipment locked up when not being used.

Jane Doe's relationship with Keblis, though starting out well, gradually became toxic. "We loved hard and we fought hard," Jane Doe testified. Keblis had violent outbursts and directed anger and threats at her. Once, when Jane Doe had a broken foot, Keblis threatened to put Jane Doe in a wheelchair and tie it to the back of his truck. On another occasion, Keblis unbuckled Jane Doe's seatbelt while they were on the freeway and threatened to push her out of the car. Keblis falsely accused Jane Doe of infidelity. Whenever Jane mentioned ending the relationship, Keblis would point to the silver handgun with a dark grip that he always carried with him.

On October 20, 2018, Keblis placed his hands around Jane Doe's neck and pushed Jane Doe against the bed. Jane Doe could not breathe and was "desperately" scared. She pulled a pen out of her pocket, placed the pen against Keblis's neck, and told him to stop and to get off of her. After that incident, Keblis and Jane Doe decided to break up.

On November 3, 2018, Keblis and Jane Doe went with some friends to a concert at a bar in Anaheim called the Doll Hut. A fight broke out at the concert; Keblis, in a bit of hysteria, told Jane Doe they needed to leave right away. They drove to Jane Doe's home with a stop on the way to eat at a

Denny's restaurant. Sometime that evening, Jane Doe told Keblis she wanted to end the relationship. Keblis became upset and showed Jane Doe the handgun in his waistband. On the drive home, he forcefully took Jane Doe's cellphone away from her.

## II.

### Keblis Assaults Jane Doe

At about 1:00 a.m. on November 5, 2018, Jane Doe was at home in bed. Her roommate, D.H., was in his bed, and Jane Doe's friend, A.L., had passed out at the foot of Jane Doe's bed while watching a movie.

Jane Doe heard some sounds, then her bedroom door "burst[] open." Keblis was standing in the doorway with his face covered by a black bandana, "COVID-style." Keblis had kicked in the door and proceeded to punch a hole in Jane Doe's television set with his bare hands. Keblis yelled at Jane Doe about her "disrespecting" him at the concert at the Doll Hut. Keblis and Jane Doe yelled at each other until Keblis ran out of the bedroom and into the living room. Jane Doe and A.L., who had been awakened by the commotion, followed him.

In the living room, Jane Doe found Keblis trying to take her amplifiers by pulling on the chains holding them in place. Jane Doe yelled at Keblis to get out of the house. As Keblis pulled forward on the chains around the amplifiers, Jane Doe pulled back, which caused him to "trip[] out the door." Jane Doe tried to shut and lock the door behind Keblis, but he pushed it back open and burst back inside. Jane Doe tried to tase Keblis (with a taser he had given to Jane Doe to protect her from him) but the taser was not fully charged and did not work. Keblis told Jane Doe that "Anaheim was his town" and she needed to leave because there was not enough room for both of them.

4

Keblis pushed Jane Doe into a chair and held her down so she could not get up. Keblis pulled a gun from his waistband and placed it against her left temple. She recognized the gun as the one she had seen Keblis carrying on November 3. Jane Doe could feel the cold metal of the gun pressed against her head: She thought she was going to die. Keblis again told Jane Doe that "Anaheim is his town." Jane Doe moved her head as Keblis pulled the trigger.

The bullet grazed Jane Doe's left earlobe. Had Jane Doe not moved, she would have been shot in the head. Jane Doe was bleeding from her left ear and was in pain. Keblis ran out of the house and took the gun with him.

The gunshot caused Jane Doe's left eardrum to burst. Jane Doe continuously suffers pain and hearing loss in her left ear, and had ringing in her left ear as of the time of trial. A piece of Jane Doe's earlobe is missing.

## DISCUSSION

## I.

### The Trial Court Did Not Err or Violate Due Process by Declining to Give CALCRIM No. 3404

Keblis argues the trial court erred and violated his due process rights by denying his request to instruct the jury with CALCRIM No. 3404 (accident) with regard to the assault charge. We find no error.

Keblis's trial counsel requested the court give CALCRIM No. 3404 with respect to the charge of attempted murder. The prosecutor did not object. Keblis's counsel then stated, "it would still be my request that accident be included as applicable [to] assault with a firearm, as well as lesser included of assault because it goes through the willfully/willfulness aspect of that element." Counsel argued "in terms of the gun allegedly being

put next to her head, it could have been an accident as he is being tased or sometime during the struggle when he has the gun, that he's not meaning to put next to her head but, because of the struggle, because of what he's experiencing, he could have slipped."

In response, the trial court stated, "it's not an accident that—it just makes him not guilty of the crime." The court declined Keblis's request to give CALCRIM No. 3404 with respect to the assault with a deadly weapon charge and lesser included offenses. CALCRIM No. 3404 was given with respect to the attempted murder charge.

Accident merely negates the mental state element of the charged offense and therefore is not a true affirmative defense. (*People v. Gonzalez* (2018) 5 Cal.5th 186, 199, fn. 3 ["Defendants are mistaken in their assertion that 'accident' is an affirmative defense"]; *People v. Anderson* (2011) 51 Cal.4th 989, 997–998 ["'The accident defense amounts to a claim that the defendant acted without forming the mental state necessary to make his or her actions a crime'"]; *People v. Jennings* (2010) 50 Cal.4th 616, 674–675 ["Generally, the claim that a homicide was committed through misfortune or accident 'amounts to a claim that the defendant acted without forming the mental state necessary to make his or her actions a crime'"].)

Inasmuch as accident merely negates an element of a charged offense, a trial court has no sua sponte duty to instruct on it. (*People v. Anderson, supra*, 51 Cal.4th at pp. 996–998.) However, if evidence is presented which would support a theory of accident, the trial court might ""have a duty to give a 'pinpoint' instruction relating such evidence to the elements of the offense and to the jury's duty to acquit if the evidence produces a reasonable doubt."" (*Id.* at pp. 996–997, quoting *People v. Saille* (1991) 54 Cal.3d 1103, 1117.)

6

Here, Keblis's trial counsel did request a pinpoint instruction on accident, and we shall presume evidence was presented to support a theory that the assault on Jane Doe was accidental. The trial court nonetheless did not err by refusing to give CALCRIM No. 3404. A court may decline to give an otherwise appropriate instruction if it is duplicative or its substance is adequately covered by the instructions given. (*People v. Ramirez* (2021) 10 Cal.5th 983, 1009; *People v. Zamudio* (2008) 43 Cal.4th 327, 368–369.) "Put another way, '[t]here is no error in a trial court's failing or refusing to instruct on one matter, unless the remaining instructions, considered as a whole, fail to cover the material issues raised at trial.'" (*People v. Jo* (2017) 15 Cal.App.5th 1128, 1174.)

The concept and substance of accident was adequately covered by the other instructions given. The trial court gave CALCRIM No. 875 on assault with a firearm. The instruction told the jury that to prove Keblis was guilty of the offense, the prosecution had to prove: "1. The defendant did an act with a firearm that by its nature would directly and probably result in the application of force to a person[;] [¶] 2. The defendant did that act *willfully*; [¶] 3. When the defendant acted, he was aware of facts that would lead a reasonable person to realize that his act by its nature would directly and probably result in the application of force to someone; [¶] 4. When the defendant acted, he had the present ability to apply force with a firearm to a person; [¶] AND [¶] 5. The defendant did not act in self-defense." (Italics added.)

CALCRIM No. 875 defined "willfully" as follows: "Someone commits an act *willfully* when he or she does it *willingly* or *on purpose*. It is not required that he or she intend to break the law, hurt someone else, or gain any advantage." (Second and third italics added.)

7

The trial court also gave CALCRIM No. 915 on simple assault, which likewise told the jury that to prove Keblis committed the offense, the prosecution had to prove "[t]he defendant did that act *willfully*." (Italics added.) The trial court also instructed the jury with CALCRIM No. 3146, which told the jury, with respect to the charge of assault, that to find that Keblis personally used a firearm, it had to find that he "*intentionally*. . . [¶] 1. Display[ed] the firearm in menacing manner [¶] 2. Hit[] someone with the weapon [¶] OR, [¶] 3. Fire[d] the weapon." (Italics added.)

Those instructions—CALCRIM Nos. 875, 915, and 3146— apprised the jurors that to convict Keblis of assault with a deadly weapon or simple assault, and to find he personally used a firearm, they had to find he had acted willfully, on purpose, or intentionally, which are the opposite of accidentally. Instructing the jury with CALCRIM No. 3404 was therefore unnecessary.

In addition, the California Supreme Court has concluded the refusal to give a requested pinpoint instruction is harmless when the instructions given were accurate and complete and counsel's arguments addressed the defense theory that was the subject of the requested instructions. (*People v. Gutierrez* (2002) 28 Cal.4th 1083, 1144 [no prejudice because the standard instructions "adequately covered the valid points in the proposed pinpoint" and "counsel's argument to the jury fully explicated the defense theme"]; *People v. Hughes* (2002) 27 Cal.4th 287, 363 ["Any lingering doubt that we could have concerning a reasonable juror's understanding of the [issue] is dispelled by defense counsel's unrebutted closing argument, in which he emphasized and 'pinpointed' for the jury the defense theory . . . ."].)

Keblis's trial counsel pinpointed and emphasized the accident theory during closing argument. Counsel argued the prosecution had the

burden of proving beyond a reasonable doubt that "this was not an accident, and essentially all the elements we're talking about attempted murder—intent to kill, assault with a firearm, residential burglary—all those elements must be proven beyond a reasonable doubt." Counsel argued the prosecution had to prove that Keblis "purposefully got the gun and put it to the side of [Jane Doe]'s head . . . he purposely did that. It's an assault and has to be proven that he did the act willfully . . . ." Counsel reviewed with the jury the evidence supporting the accident theory, including Keblis's own testimony, and argued: "Mr. Keblis had no intention to shoot that gun. It was an accident."

Because accident is not an affirmative defense, the trial court did not violate Keblis's due process right to present a complete defense. (*Crane v. Kentucky* (1986) 476 U.S. 683, 690; *California v. Trombetta* (1984) 467 U.S. 479, 485.) Keblis had full and fair opportunity to present evidence and argue that he acted accidentally and, therefore, did not act with the requisite mental state for assault with a firearm.

## II.

### The Trial Court Did Not Err by Declining to Strike a Prior Conviction

A. *Background*

Keblis argues the trial court erred by denying his motion to strike either or both of his prior strikes without considering the length of his sentence, his substance abuse issues, or his severe childhood trauma. He also argues the trial court erred by considering his false trial testimony.

Keblis had a prior conviction for preventing or dissuading a victim from testifying (§ 136.1, subd. (c)(1)) and a prior conviction for inflicting corporal injury (§ 273.5, subd. (a)). The prior convictions were for

9

separate criminal acts which occurred in 2013 and which were charged under the same case number. Keblis pleaded guilty to those charges and he was convicted of them in May 2014. The prior strikes rendered Keblis eligible for a sentence of 25 years to life in prison under the Three Strikes law. (§ 667, subds. (d), (e)(2)(A); see *People v. Williams* (1998) 17 Cal.4th 148, 151–152.)

In his sentencing brief, Keblis invited the trial court to strike one or both of those prior convictions in the interest of justice pursuant to *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497 (*Romero*). At the sentencing hearing, Keblis's counsel argued that Keblis had a history of witnessing violence in the home and was a victim of sexual assault in high school and, therefore, a third-strike sentence would not be in the interest of justice.

The trial court declined the invitation to strike the prior convictions. At the sentencing hearing, the court stated, "I read about the family from both of you, so I have a sense of the family history, Mr. Keblis, and the stories about your dad, for example. It sounds like drugs have been a part of this for generations, you know." The court stated it had considered the sentencing briefs, the mitigating factors, and the aggravating factors, and that it was aware of its legal ability to strike prior strikes. The court stated: "Mr. Keblis, . . . . [w]hen I read and listen to your family tell me about what a nice guy you are and that sort of thing, I can see that. I want you to know that. . . . When you're not on drugs, you probably are a really nice guy. Forgive me, but when you're on drugs, you're a maniac. A maniac. Going in that house screaming about how, 'This is Anaheim,' tossing that bedroom, and eventually coming out and cranking off a round next to [Jane Doe's] head—you're a maniac when you're on drugs. And I have to protect the community. Period. [¶] My obligation is not just to you and your family, but

10

when Keblis is on drugs, this community is not safe. I'm sorry that that's the way it has to be."

The trial court also stated its belief that Keblis had given perjured testimony and found that to be an aggravating circumstance: "[T]he lies in the courtroom during your testimony are a factor that this Court has considered. And that's a major factor in aggravation, in addition to the violence that you perpetrated on [Jane Doe]."

The trial court did strike the use of firearm enhancement for purposes of sentencing. The court imposed an additional five years for the infliction of great bodily injury enhancement to reach a total term of 30 years to life in prison.

B. *The Three Strikes Law and Standard of Review*

The Three Strikes law was enacted "to ensure longer prison sentences and greater punishment for those who commit a felony and have been previously convicted of one or more serious or violent felony offenses." (§ 667, subd. (b); see *Romero, supra*, 13 Cal.4th at pp. 504–505.) A prior conviction which qualifies under the statutory definitions of a serious or violent felony constitutes a "'strike'" under the Three Strikes law. (*People v. Henderson* (2022) 14 Cal.5th 34, 44.)

A trial court has discretion to strike a prior strike under the Three Strikes law "in furtherance of justice" pursuant to Penal Code section 1385, subdivision (a). (*Romero, supra*, 13 Cal.4th at pp. 530–531.) "[I]n ruling whether to strike or vacate a prior serious and/or violent felony conviction allegation or finding under the Three Strikes law, on its own motion, 'in furtherance of justice' pursuant to Penal Code section 1385[, subdivision] (a), or in reviewing such a ruling, the court in question must consider whether, in light of the nature and circumstances of his

11

present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*People v. Williams, supra*, 17 Cal.4th at p. 161.)

"[A] court's failure to dismiss or strike a prior conviction allegation is subject to review under the deferential abuse of discretion standard." (*People v. Carmony* (2004) 33 Cal.4th 367, 374.) "[A]n appellate court may not substitute its judgment about appropriate sentencing for that of the trial court, but instead must give due regard to the discretion vested in that court. [Citations.] The appellate court can find a reversible abuse of discretion only if it concludes that no reasonable judge would have agreed with the trial court's decision." (*People v. Dain* (2025) __ Cal.5th __, __ [2025 Cal.Lexis 4911, at p. *11].) Accordingly, "a trial court will only abuse its discretion in failing to strike a prior felony conviction allegation in limited circumstances. For example, an abuse of discretion occurs where the trial court was not 'aware of its discretion' to dismiss [citation], or where the court considered impermissible factors in declining to dismiss." (*Carmony*, p. 378.)

C. *The Trial Court Considered Proper Factors and Its Decision Was Not Arbitrary or Irrational*

The trial court's decision not to strike Keblis's prior strikes was neither irrational nor arbitrary and did not constitute an abuse of its discretion. The trial court expressly stated it was aware of its "legal ability" to strike Keblis's prior strikes. The court considered Keblis's family history and recognized that "drugs have been a part of this for generations." The court found that when Keblis was on drugs, he was "a maniac" and a threat

12

to the community. "When Keblis is on drugs," the court found, "this community is not safe." The court considered the seriousness of the offense for which Keblis had been convicted—assault with a firearm, which qualifies as a violent felony under section 667.5, subdivision (c)(8). (See *People v. Rodriguez* (2009) 47 Cal.4th 501, 505.) Although the jury had acquitted Keblis of attempted murder, the court considered the prospect that, had Jane Doe not moved her head in time, "she would have been killed that night."

Keblis argues the trial court erred by basing its decision on its belief he had committed perjury at trial. In support of this argument, Keblis cites to section 1170, subdivision (b)(2), which permits a court to impose a sentence exceeding the middle term only when there are circumstances in aggravation and the facts underlying those circumstances have been stipulated to by the defendant or have been found to be true beyond a reasonable doubt by the jury. Section 1170, subdivision (b)(2) does not apply to a Three Strikes law sentence, which is an indeterminate sentence. (See *People v. Murphy* (2001) 25 Cal.4th 136, 156–157 [calculation of a defendant's sentence under the Three Strikes law is not the same as imposition of an upper term instead of a lower or middle term].)

In deciding whether to strike a prior felony conviction, a trial court may consider factors, such as "the particulars of [the defendant's] background, character, and prospects." (*People v. Williams, supra*, 17 Cal.4th at p. 161.) Whether Keblis testified falsely reflected on his character and prospects for future recidivism.[2] "A trial court's conclusion that a defendant

---

[2] Keblis argues in his reply brief that "to the extent the court considered appellant's alleged lack of remorse as a basis for denying his *Romero* motion, this was improper and an abuse of discretion." The appellate record shows neither that the trial court found Keblis lacked remorse nor that

has committed perjury may be considered as one fact to be considered in fixing punishment as it bears on defendant's character and prospects for rehabilitation." (*People v. Redmond* (1981) 29 Cal.3d 904, 913, overruled on another ground in *People v. Cortez* (2016) 63 Cal.4th 101, 118–119.)

But "[e]ven when "'a trial court has given both proper and improper reasons for a sentence choice, a reviewing court will set aside the sentence only if it is reasonably probable that the trial court would have chosen a lesser sentence had it known that some of its reasons were improper.'"'" (*People v. Mendoza* (2022) 74 Cal.App.5th 843, 856.) We have no doubt the trial court would have made the same decision had it not considered Keblis's trial testimony. This is far from the "extraordinary" case in which "no reasonable minds could differ [that] the failure to strike would constitute an abuse of discretion." (*People v. Carmony, supra*, 33 Cal.4th at p. 378.)

Keblis argues the trial court failed to give proper consideration to his substance abuse issues. We disagree. The court recognized that "drugs have been part of this for generations" and made the rational finding that "[w]hen Keblis is on drugs, this community is not safe." Keblis's sister, when speaking at the sentencing hearing, told the court: "My brother is a drug addict. He has been for a long time. He needs help. He needs help just to recover, to get past all those . . . addictions that he has." However, no evidence or testimonial was presented that Keblis had ever sought treatment or made any effort to overcome his substance abuse issues. (See *People v. Avila* (2020) 57 Cal.App.5th 1134, 1143 ["a defendant's drug problem may have little mitigating value where the problem is long-standing"]; *People v.*

_____

the court used lack of remorse as reason for declining to strike a prior strike.

14

*Martinez* (1999) 71 Cal.App.4th 1502, 1511 ["drug addiction is not necessarily regarded as a mitigating factor when a criminal defendant has a long-term problem and seems unwilling to pursue treatment"].) The court was not required to strike a prior conviction simply because Keblis had a substance abuse problem.

Keblis argues the trial court erred by failing to consider the factors set forth in section 1385, subdivision (c) (section 1385(c)), which was added by Senate Bill No. 81 (2021–2022 Reg. Sess.) (Stats. 2021, ch. 721, § 1). Section 1385(c) provides, "the court shall dismiss an enhancement if it is in the furtherance of justice to do so," and instructs the court to "consider and afford great weight to evidence offered by the defendant to prove [specified] mitigating circumstances." (§ 1385(c)(1), (2).) Keblis contends the trial court should have considered the mitigating circumstance that "[t]he current offense is connected to prior victimization or childhood trauma." (§ 1385(c)(2)(E).)

Section 1385(c) applies only to the dismissal of an enhancement, and a sentence under the Three Strikes law is not an enhancement. (*People v. Dowdy* (2024) 107 Cal.App.5th 1, 9–10 ["It is well established, however, that section 1385, subdivision (c) applies by its terms to a sentence 'enhancement,' but not to a sentence derived from the alternative sentencing scheme of the Three Strikes law"]; *People v. Olay* (2023) 98 Cal.App.5th 60, 64–69 ["section 1385, subdivision (c) does not apply to the Three Strikes law"]; *People v. Burke* (2023) 89 Cal.App.5th 237, 243 ["the Three Strikes law is not an enhancement; it is an alternative sentencing scheme"].) "If the Legislature had wanted section 1385, subdivision (c) to apply to prior strikes as well as to enhancements as legally defined, it would have said so." (*Olay*, at p. 67.) We agree.

15

Keblis contends the length of his sentence is disproportionate to the offense and asks us to consider whether that sentence is "just." It is a correct proposition, as Keblis argues, that a defendant's sentence is "the overarching consideration" in deciding whether to strike a prior "because the underlying purpose of striking prior conviction allegations is the avoidance of unjust sentences." (*People v. Garcia* (1999) 20 Cal.4th 490, 500.) But that proposition must be squared with the standard of review, which dictates an appellate court can find a reversible abuse of discretion "only if it concludes that no reasonable judge would have agreed with the trial court's decision." (*People v. Dain, supra,* __ Cal.5th at p. __ [2025 Cal.Lexis 4911, at p. *11].) Here, a reasonable judge could have agreed with the trial court's decision.[3]

Finally, Keblis argues, "In the context of sentencing reform as a whole, 'legislators and courts are reconsidering the length of sentences in different contexts to decrease their severity.'" (Quoting *People v. Avila, supra,* 57 Cal.App.5th at p. 1151.) However, Keblis has not cited to any legislative enactment applicable to the trial court's decision whether to strike one of his prior strikes. (See, e.g., § 1385(c) [applicable to dismissal of enhancements].) The court in *People v. Avila* considered legislative enactments that had made changes to recidivist law, redefined culpability for various crimes, and decreased severity of punishment when the court addressed the defendant's contention that his sentence constituted cruel or unusual punishment under article I, section 17 of the California Constitution. (*Avila*, pp. 1150–1151.) Those changes, the *Avila* court reasoned, "suggest[ed] disproportionality in [the defendant]'s sentence," which is a factor in determining whether a

---

[3] The trial court struck the use of firearm enhancement for purposes of sentencing, which prevented an additional ten years from being added onto Keblis's sentence.

16

sentence constitutes cruel or unusual punishment. (*Id.* at p. 1151.) Keblis does not contend his sentence constituted cruel and unusual punishment under the Eighth Amendment to the United States Constitution or cruel or unusual punishment under article I, section 17 of the California Constitution.

DISPOSITION

The judgment is affirmed.

SANCHEZ, J.

WE CONCUR:

MOORE, ACTING P. J.

GOODING, J.

17